JAMES B. CROSS and CLARK SHEPARDSON, Plaintiffs
in Error,

*vs.*

EDWARD BUTTON, Defendant in Error.

ERROR TO MILWAUKEE COUNTY COURT.

Where rent is paid quarterly in advance, in pursuance of the covenants of a lease,
and after payment of a quarterly installment of rent by the lessee, and before the
next ensuing quarter the tenement is consumed by fire; *Held*, that the tenant
so paying his quarterly installment of rent in advance, could not recover of the
lessor or the assignee of the lessor, a sum so paid in advance for the quarter pro-
portioned to the time of the quarter subsequent to the destruction of the building
or tenement by fire.

The rights of landlord and tenant in case of destruction of the tenement by fire,
without the culpable negligence of the lessee, considered.

THIS was an action of covenant brought by the defendant
in error as assignee of the lessees, against the plaintiffs in error
as assignees of the lessor, upon covenants contained in a demise
or lease of certain premises in the city of Milwaukee, known as
the "United States Hotel," which was afterwards destroyed by
fire. The defendants below demurred to the declaration of the
plaintiff below, which was overruled by the court, and judg-
ment rendered for the plaintiff, to reverse which this writ of
error was sued out.

In order to present the questions raised by the declaration and
demurrer, it is necessary to set out the declaration pretty much
at length, which is substantially as follows.

"For that, whereas, &c., on the 23d day of January, 1846,
at the county of Milwaukee, &c., by a certain indenture then
and there made between Ira Couch of the one part and Dexter
Tafft and William H. Spurr, .of the other part, one part of
which said indenture, sealed with the seal of said Couch, the
said plaintiff now brings here into court, the date whereof is
the day and year aforesaid, the said Ira Couch did demise and
lease unto the said Tafft and Spurr, their heirs, executors, ad-
ministrators and assigns, a certain messuage, with the appurten-

ances particularly mentioned and described in the said indenture, situated in the (then) town (now city) of Milwaukee, (then) territory (now state) of. Wisconsin, on the east side of the Milwaukee River, in the county aforesaid, and described as follows, to wit: Commencing at the southwest corner of lot No. seven (7) in block No. seven, and on the corner of Huron and Water streets, thence running northerly on the west line of the said lot seven and lot eight, eighty feet, and thence on a line parallel with the north line of said lot seven, easterly to the east line of said lot eight, and from thence on the east line of said lots eight and seven, to the southeast corner of lot seven, and from thence on the south line of said lot seven to the place of beginning, with buildings thereon, with the exception of four rooms in the first and lower story in the main building, known as the United States Hotel, three of which fronting on Water street, and one on Huron street, together with the basement rooms or cellars under the said rooms or stores, and of the same size as the stores on the ground floor—to have and to hold the said demised messuage and premises unto the said Tafft and Spurr, their heirs, executors, administrators and assigns, for and during the full term of ten years from and after the twenty-fifth day of October, in the year 1845, which terminates on the 25th day of October, 1855, yielding and paying therefor to the said Couch, his heirs, executors, administrators or assigns, the yearly rent of thirteen hundred and seventeen dollars and fifty cents, for each and every year, payable in equal quarterly payments, in advance; that is to say, one fourth part of the said sum of thirteen hundred and seventeen dollars and fifty cents, to be paid in advance, at the commencement of each and every quarter during each and every year of the aforesaid period of ten years.

"And the said Ira Couch did thereby, for himself, his heirs, executors, administrators and assigns, covenant, promise and agree to and with the said Dexter Tafft and William H. Spurr, their heirs, executors, administrators and assigns, that in case the buildings thereby demised and rented, or any portion thereof, should be destroyed by fire without the culpable negligence or fault of the said Tafft and Spurr, that he, the said Couch, should cause the same to be repaired and restored with all rea-

sonable dispatch,[1] and that for such time as the said Tafft and Spurr should be deprived of any portion of the buildings so destroyed by fire, a corresponding deduction should be made and allowed in the rent of said premises.

" And whereas, by a certain other indenture or supplemental agreement afterwards, to wit, on the seventeenth day of February, eighteen hundred and forty-six, made and entered into by and between the same parties to the said first-mentioned indenture, one part of which last-mentioned indenture, sealed with the seal of said Ira Couch, the said plaintiff now brings here into court, bearing date the day and year last aforesaid ; the said Tafft and Spurr covenanted, promised and agreed to and with said 'Couch, in consideration of a certain enlargement and improvement therein particularly mentioned, of the buildings in said first-mentioned indenture described in and by this said last-mentioned indenture, agreed to be made by said Couch, to pay the said Couch the annual rent of fifteen hundred and twenty-five dollars, instead of the rent in and by said first indenture above set forth, reserved, to commence from and after the 24th day of May, A. D. 1846, and to continue during the said first indenture, and to be payable at the times and in the manner in said first-mentioned indenture or supplemental agreement annexed to said first-mentioned indenture, and there underwritten, will, among other things, more fully and at large appear.

" By virtue of which said demise, the said Tafft and Spurr afterwards, to wit, on the day and year first above mentioned, entered into and upon, all and singular, the said demised premises, with the appurtenances, and possessed and occupied the same.

" And the said plaintiff in fact saith, that after the making of the said indenture, to wit, on the twenty-seventh day of April, in the year eighteen hundred and fifty-three, the said Ira Couch, the party of the first part to said indenture, assigned, sold, granted and conveyed the reversion of the demised premises, and all the estate, right, title and interest of him, the said Couch, of, in and to the same, together with the appurtenances, to the said defendants, whereby the reversion, and all the estate, right,

---

[1] Covenant of option to T. & S. to rebuild omitted.

title and interest of the said Couch of, in and to the said premises and the appurtenances, legally came to and became the property of and vested in the said defendants as the assignees and grantees of the said Couch, as aforesaid; and the said reversion and estate of the said Couch in said premises being so vested in the said defendants afterwards, to wit, on the fifteenth day of March, A. D. 1854, all the estate, right, title and interest of the said Dexter Tafft and William Spurr, the parties of the second part to the above-mentioned indentures of, in and to the said demised premises with the appurtenances, by assignment thereof, legally came to and vested in the said plaintiff.

"And the said plaintiff in fact saith that, although he, the said plaintiff, hath at all times from the time that he became assignee as aforesaid, well and truly performed and fulfilled all things contained in the said indentures on his part and behalf as assignee, as aforesaid, to be performed and fulfilled according to the tenor, true intent and meaning of the said indentures, and punctually and faithfully paid the full rent of the said demised premises to the said defendants as grantees and assignees of the said Couch as aforesaid, quarterly in advance, according to the terms and conditions of said indentures, to wit, at the place aforesaid; yet protesting that the said defendants have not performed, fulfilled and kept anything in the said indentures contained on their part and behalf as assignees as aforesaid, to be performed, fulfilled and kept according to the tenor and effect, true intent and meaning thereof; he, the said plaintiff, in fact saith that after the making of the said indentures, and during the term thereby granted, and after the said plaintiff and the said defendants respectively became assignees as aforesaid, to wit: on the twenty-fourth day of August, eighteen hundred and fifty-four, the said buildings in said indentures mentioned, and thereby rented and demised, and the whole and every part and portion thereof, were wholly destroyed by fire without the culpable negligence or fault of the said plaintiff or any of the said second parties in said indentures; and said buildings and demised premises thereby became and were wholly useless to the said plaintiff, whereby the said plaintiff from the time of the destruction of said buildings as aforesaid, to wit: from the 24th day of August, A. D. 1854, hitherto has been wholly deprived

of all and every portion of the buildings so destroyed; but although the said defendants had notice of the destruction of said buildings aforesaid; and although a reasonable time has elapsed for the restoration of such buildings, yet said plaintiff in fact saith that the said defendants have not, nor has either of them, repaired or restored the said buildings so destroyed by fire as aforesaid; nor has any deduction' whatever been made or allowed in the rent of the said premises for such time as he, the said plaintiff, has been deprived of said building so destroyed by fire as aforesaid. On the contrary thereof, the said defendants, though often requested, have hitherto utterly refused and neglected to repair or restore said building so destroyed by fire as aforesaid, or to make or allow any deduction in the rent of said demised premises, by returning or repaying to the said plaintiff the rent thereof already paid to the said defendants in advance, for the quarter commencing July 25, 1854, for such time in the said quarter as the said plaintiff was deprived of said building so destroyed as aforesaid.

"And so the said plaintiff saith that the said defendants as assignees aforesaid, have not kept the covenants in the said indenture contained on their part to be kept and performed, but on the contrary hereof have broken the same and to keep the same have hitherro neglected and refused and still do neglect and refuse, contrary to the tenor and effect of the said indenture and of the said covenants in that behalf so made as aforesaid, to wit, at the county of Milwaukee aforesaid.

"And also for that whereas afterwards, to wit, on the twenty-third day of January, one thousand eight hundred and forty-six, at the county of Milwaukee aforesaid, by a certain other indenture then and there made between Ira Couch of the one part and Dexter Tafft and William H. Spurr, of the other part, the counterpart of which said indenture sealed with the seal of said Ira Couch, the said plaintiff now brings into court, the date whereof is the day and year last aforesaid, the said Ira Couch did demise and lease unto the said Tafft and Spurr a certain messuage and premises particularly described in the said last-mentioned indenture situated in the town of Milwaukee (now known as the city of Milwaukee) territory of Wisconsin (now known as the state of Wisconsin) on the east side of the Mil-

waukee River and described as follows, to wit: commencing at the southwest corner of lot No. seven in block No. seven and on the corner of Huron and Water streets, thence running northerly on the west line of said lot seven and lot eight, eighty-feet, and from thence on a line parallel with the north line of said lot seven, easterly to the east line of said lot eight, and from thence on the east line of said lots eight and seven to the southeast corner of said lot seven, and from thence on the south line of said lot seven to the place of beginning, with the buildings thereon, with the exception of four rooms in the first and lower story in the main building known as the United States Hotel, three of which, fronting on Water street, and one on Huron street, together with the basement rooms or cellars under the said rooms or stores and of the same size as the stores, on the ground floor.

" To have and to hold the said last-mentioned above-described premises unto the said Tafft and Spurr, their heirs, executors, administrators and assigns, for and during the full term and period of ten years from and after the twenty-fifth day of October, one thousand eight hundred and forty-five, which terminates on the 25th day of October, A. D. 1855, they, the said Tafft and Spurr, yielding and paying therefor the yearly rent of thirteen hundred and seventeen dollars and fifty cents for each and every year, payable in equal quarterly payments, in advance, that is to say, one fourth part of said sum of thirteen hundred and seventeen dollars and fifty cents, should be paid in advance at the commencement of each and every quarter during each and every year of the aforesaid period of ten years.

" And the said Ira Couch, for himself, his heirs, executors, administrators and assigns, did thereby covenant, promise and agree to and with the said Dexter Tafft and Wm. H. Spurr, their heirs, executors, administrators and assigns, that in case the said building by said last-mentioned indenture rented, or in case any portion of such building should be destroyed by fire, without the culpable negligence or fault of the said Tafft and Spurr, that then the said Couch, his heirs, executors, administrators and assigns, should cause the same to be repaired and restored with all reasonable dispatch, and that in case of their refusal or neglect to repair and restore such building for the space of thirty days, the

said Tafft and Spurr, their heirs, executors, administrators or assigns, might repair and restore the same, and retain rents sufficient to pay themselves for the cost thereof, and that for such time as the said Tafft and Spurr, their heirs, executors, administrators or assigns, should be deprived of any portion of the building so destroyed by fire as aforesaid, a corresponding deduction should be made and allowed in the rent of the said premises.[1]

." By virtue of which said last-mentioned demise the said Tafft and Spurr, afterwards, to wit, on the twenty-third of January, in the year 1846, became and were seized of all and singular, the said last-mentioned demised premises, with the appurtenances in and by the said last-mentioned indenture granted as aforesaid. And the said plaintiff in fact saith that after the making of the said last-mentioned indenture, to wit, on the 27th day of April, A. D. 1853, at the place aforesaid, the said Ira Couch, party of the first part in said last-mentioned indenture, bargained and sold, granted, assigned and conveyed unto the said defendants, their heirs and assigns, all the said demised premises in said last-mentioned indenture described, and the reversion thereof, and all the estate, right, title and interest of him, the said Ira Couch, in and to the same, and that the reversionary interest in said premises in said last-mentioned indenture described with the appurtenances by the assignment, grant and conveyance thereof as aforesaid, legally come to become the property of, and was vested in the said defendants. And the said reversionary interest and estate in the said premises being so vested in the said defendants, afterwards, to wit, on the fifteenth day of March, A. D. one thousand eight hundred and fifty-four, at the place aforesaid, all the estate, right, title and interest of the said Dexter Tafft and William H. Spurr, the parties of the second part to the last above mentioned indenture, of, in and to the whole of the said demised premises, with the appurtenances, by assignments thereof legally come to and vested in the said plaintiff.

" And the said plaintiff in fact saith, that although he, the said plaintiff, hath at all times from the time that he became assignee as aforesaid, well and truly performed and fulfilled all things con-

---

[1] Supplemental Agreement omitted.

tained in the said last-mentioned indenture on his part and behalf as assignee as aforesaid, to be performed and fulfilled according to the tenor, true intent and meaning of the said last-mentioned indenture, and punctually and faithfully paid the full rent of the said last-mentioned demised premises to the said defendants as grantees and assignees of the said Couch as aforesaid, quarterly in advance, according to the terms and conditions of said last-mentioned indenture, and did on the second day of August, 1854, pay to the said defendants, as assignees of said Couch as aforesaid, the full rent in advance, for the quarter commencing July twenty-fifth, and ending October twenty-fifth, A. D. 1854, for the said last-mentioned demised premises, as required by the terms of the said last-mentioned indenture, to wit, at the place aforesaid ; yet protesting that the said defendants have not performed, fulfilled and kept anything in the said indenture last mentioned, contained on their part and behalf as grantees and assignees of the said Couch as aforesaid to be performed, fulfilled and kept, according to the tenor and effect, true intent and meaning thereof, he the said plaintiff in fact saith, that after the making of the said last-mentioned indenture and during the term thereby granted and after the said plaintiff and the said defendants respectively, became assignees as aforesaid, to wit, on the twenty-fourth day of August, eighteen hundred and fifty-four, the said building in said last-mentioned indenture mentioned, and therein and thereby rented and demised, and the whole and every part and portion thereof was utterly destroyed by fire, without the culpable negligence or fault of the said plaintiff, or of any of the second parties to the said last-mentioned indenture, and said building thereby became and were from thence, hitherto have continued to be wholly useless to the said plaintiff, and the said plaintiff has thereby, to wit, from the destruction of said building by fire as last aforesaid, hitherto been wholly deprived of all and every portion of the building, so destroyed as aforesaid, but although the said defendants had notice of the destruction of said last-mentioned building as aforesaid, and although a reasonable time has long since elapsed for the restoration of said building, yet said plaintiff saith, that the said defendants have not nor has either of them repaired or restored, or caused to be repaired, the said building so destroyed by fire, as last aforesaid, and that no deduction what-

ever has been made or allowed to the said plaintiff in the rent of the said last-mentioned building or premises for such time as he, the said plaintiff, has been deprived of said last-mentioned building so destroyed by fire as aforesaid; on the contrary thereof the said plaintiff saith that the said defendants, though often requested so to do, have hitherto utterly refused and neglected to repair or restore said building so destroyed as last aforesaid, or to make or allow any deduction whatever in the rent of said demised premises last above mentioned, by returning or repaying to the said plaintiff the rent thereof already paid to the said defendants, in advance for the quarter commencing July 25th, A. D. 1854, for such time in the said quarter as the said plaintiff was deprived of said last-mentioned demised premises by the destruction of said building last mentioned by fire as aforesaid.

"And so the said plaintiff saith that the said defendants, as assignees as aforesaid, although often requested, have not kept the covenant, the said last-mentioned indenture contained in their part to be kept and performed, but on the contrary thereof have broken the same, and to keep the same have hitherto neglected and refused, and still neglect and refuse, contrary to the tenor and effect of the said last-mentioned indenture, and of the said covenants in that behalf, so made as aforesaid, to wit, at the county of Milwaukee aforesiad, and to the damage of the said plaintiff of five hundred dollars, for which he brings his suit," &c.

To this declaration defendants interposed a demurrer as follows:

And the said defendants by Peter Yates, their attorney, come and defend the wrong and injury, when, &c., and crave oyer of the said supposed indenture and supplemental agreement in the said declaration, and it is read to them in these words:

"This indenture of lease made and entered into this twenty-third day of January, in the year of our Lord one thousand eight hundred and forty-six, by and between Ira Couch of the city of Chicago, in the state of Illinois, of the one part, and Dexter Tafft and William H. Spurr of Milwaukee, Wisconsin territory, of the second part, witnesseth, that the said Couch, for and in consideration of the rents hereinafter reserved, and the covenants on the part of the said Tafft and Spurr to be kept and performed, hath demised and leased, and by these presents doth

demise and lease unto them, the said Tafft and Spurr, that certain messuage situated in the town of Milwaukee, territory aforesaid, on the east side of the Milwaukee River, and described as follows, to wit: Commencing at the southwest corner of lot number seven (7) in block number seven (7) and on the corner of Huron and Water streets, thence running northerly on the west line of said lot seven and lot eight, eighty feet, and from thence on a line parallel with the north line of said lot seven, easterly to the east line of said lot eight, and from thence on the east line of said lot eight and seven to the southeast corner of said lot seven, and from thence on the south line of said lot seven to the place of beginning, with the buildings thereon, with the exception of four rooms in the first or lower story in the main building, known as the United States Hotel, three of which fronting on Water street, and one on Huron street, and being in the occupancy at the date hereof, of the following persons, to wit: The one fronting on Huron street being occupied by John Fitzpatrick and Henry Gallaghan; one on Water street by Daniel C. Vantine, and one by Saxton & Crane, and the other by Josiah D. Weston, together with the basement rooms or cellars under the said rooms or stores, and of the same size as the stores on the ground floor; for and during the full term of ten years from and after the twenty-fifth day of October, in the year of our Lord one thousand eight hundred and forty-five, fully to be ended and completed. To have and to hold the above demised premises unto the said Tafft and Spurr, their heirs, executors, administrators and assigns, for and during the aforesaid period of ten years, which terminates on the twenty-fifth day of October, in the year of our Lord one thousand eight hundred and fifty-five, unless this lease shall sooner be determined as hereinafter provided. Yielding and paying therefor the yearly rent of thirteen hundred seventeen dollars and fifty cents, for each and every year, payable in equal quarterly payments in advance, that is to say, one fourth part of the said sum of thirteen hundred seventeen dollars and fifty cents shall be paid in advance at the commencement of each and every quarter during each and every year of the aforesaid period of ten years. And the said Tafft and Spurr for themselves, their heirs, executors and administrators, covenant and agree to pay unto the said Couch, his heirs,

Cross and Shepardson vs. Button.

executors, administrators and assigns, the said yearly sum of thirteen hundred seventeen dollars and fifty cents, commencing with the 25th day of October, A. D. 1845, during the full term of this lease, at the time and in the manner hereinbefore specified. And the said Tafft and Spurr, in manner aforesaid, further cov-enant and agree to pay all taxes on the premises hereby leased (with the exception of such special taxes as may be levied for the purpose of opening, widening or grading streets or improving sidewalks), from the said 25th day of October, A. D. 1845, and also to save the said Couch harmless from all such taxes for and during the full term of this lease. And also in like manner to pay all the insurance moneys the said Couch may be obliged to pay from time to time, during the time last aforesaid, to procure the building hereby leased to be insured by safe and responsible insurance companies, it being understood that the amount of taxes and insurance money which the said Tafft and Spurr are to pay on the said premises so as aforesaid leased by them, shall bear the same proportion to the taxes and insurance of the entire grounds hereby leased, and the buildings thereon, which the value of the part rented and occupied by them bears to the whole of said property, and that the value of the parts respectively shall be determined by the amount of yearly rents; each party paying in proportion to his rents. And the said Tafft and Spurr in like manner further covenant and agree during the said term of ten years to use and occupy the said demised premises as a public house, and at all times to keep it furnished with furniture, beds and bedding, and other apparatus, as may be necessary for a public house of that description, in order to keep it in first rate style. And also to use said building in a careful and prudent manner, and to keep the same in good repair throughout, at their own charge and expense, during the full term of this lease, ex-cepting ordinary wear and decay, and accident or destruction by fire, which could not be prevented by ordinary care and diligence; but the said Couch is to paint the whole interior of the building with a good coat of paint once in three years; and he hereby agrees to do the same. And it is mutually agreed and under-stood by and between the parties hereto, that in case of the fail-ure of the said Tafft and Spurr to pay any portion of the afore-said rents for ten days after the same shall become due, and shall

have been demanded on the premises, and in case the said Couch shall pay any sum of insurance money or taxes which may or shall have become due on the premises hereby leased, and the said Tafft and Spurr shall neglect or refuse to pay such portion thereof as by this lease they are bound to pay, for the space of ten days after the same shall be demanded of them or their agent or representatives, then, and in either of said cases it shall be lawful for the said Couch to re-enter and take possession of said premises, and receive the rents and profits thereof, and to forfeit this lease, or to seize upon any of the property of the said lessees on the premises by distress warrant, and sell the same for the payment of said arrearages of rent or taxes, or insurance money, together with all costs. It is further in like manner mutually agreed and understood, that said Tafft and Spurr may at any time relet the premises hereby leased to them, provided the same shall be so let to a person or persons of temperate habits and respectable character, having at least five thousand dollars of money to furnish said public house, and to carry on the business thereof, over and above all just debts and demands against him or them.

"It is further in like manner mutually agreed and understood, that in case the building hereby rented, or any portion thereof, shall be destroyed by fire without the culpable negligence or fault of the said Tafft and Spurr, that the said Couch shall cause the same to be repaired and restored with all reasonable dispatch; and in case of his refusal or neglect so to do for the space of thirty days, the said Tafft and Spurr may repair or restore the same, and retain rents sufficient to pay themselves for the cost thereof, and for such time as the said Tafft and Spurr shall be deprived of any portion of the building so destroyed by fire, a corresponding deduction shall be allowed in the rent of the premises.

"It is further in like manner mutually agreed and understood, that the present occupants, or any that may hereafter, during the continuance of this, may occupy rooms or portions of said building hereinbefore reserved from the operations of this lease by the said Couch, shall have the right at all times to pass and repass personally over the yard and grounds in the rear of the rooms or stores so occupied, giving no unnecessary trouble thereby. And it is mutually agreed and understood by and between

the parties hereto, that all the rights, privileges, covenants and agreements herein contained, are to extend and bind the heirs, executors, administrators and assigns of the parties respectively.

"In witness whereof, &c.,

"STEPHEN HUTCHINSON."

*Supplemental Agreement.*—"This supplemental agreement, made this 17th day of February, A. D. 1846, between the foregoing parties, witnesseth that the said Couch agrees to raise the upper story of said hotel, so as to make the same eight feet and a half in the clear, and have the same finished by the 24th day of May next. In consideration of which the said Tafft and Spurr covenant and agree to pay the said Couch the rent of fifteen hundred and twenty-five dollars, instead of the rent above reserved, to commence from and after the said 24th day of May, and to continue during the lease, and to be payable at the times and in the manner above provided; and further, that they are to paint, after the first year, at their own expense, all the wood work in said fourth or upper story, over and above what is now there." (Signed by parties.)

Which being read and heard, the said defendant says, that the said declaration and the matters therein contained, in manner and form as the same are above stated and set forth, are not sufficient in law for the said plaintiff to have or maintain his aforesaid action thereof against the said defendants, and they, the said defendants, are not bound by law to answer the same, and this they are ready to verify. Wherefore, by reason of the insufficiency of the declaration in this behalf, the defendants pray judgment, and that the said plaintiff may be barred from having or maintaining his aforesaid action thereof against them, &c. And the said defendants, according to the form of the statute, &c., state and show to the court here, the following causes of demurrer to the said declaration, that is to say:

1st. That several material parts of the said indenture and supplemental agreement which qualify and alter the indenture and supplemental agreement as stated in the said declaration, are omitted and misstated by the plaintiff therein.

2d. Because performance by the plaintiff, of all the covenants in the said indenture and supplemental agreement contained, is not alleged in the said declaration.

3d. Because the said breaches assigned are double.

4th. Because they are not directly and positively assigned, averred or alleged, but argumentatively, or by way of argument only.

5th. Because the said plaintiff is not the lawful assignee of said Tafft and Spurr, or entitled to the legal benefits of the covenants made to and with them; and because the said declaration is in other respects uncertain, informal and insufficient, &c.

Which said demurrer was, after argument, overruled by the court, and the defendant's default entered for want of a plea, and the plaintiff's damages assessed by the court at $224.42, for which sum and costs, taxed at $    judgment was rendered and entered for the plaintiff below.

*P. Yates,* for the plaintiffs in error.

*J. Stark,* for the defendant in error.

*By the Court,* SMITH, J. This was an action of covenant brought by the defendant in error, in the Milwaukee Circuit Court, as assignee of the lessees, against the plaintiffs in error as the assignees of the lessor, upon covenants contained in a demise of certain premises known as the " United States Hotel," in the city of Milwaukee, afterwards destroyed by fire. Judgment in the court below was rendered upon demurrer to the declaration; and the main question presented by the pleadings, and discussed in the argument at bar, is, whether the lessor or his assigns was bound to refund the whole or any part of the installment of rent paid in advance, according to the terms of the lease, in case the building should be in whole or in part, destroyed by fire. The lease was for ten years from and after the 25th day of October, A. D. 1845, at the yearly rent of $1,317.50, payable quarterly in advance. The lease also provided, that in case the building thereby demised and rented, or any portion thereof, should be destroyed (by fire) without the culpable negligence of the lessee or his assignees, the lessor or his assigns should cause the same to be repaired and restored with all reasonable dispatch (or that under certain circumstances the lessees might repair), " and for such time as the said lessees (or their

assignees) should be deprived of the use of any portion of the buildings so destroyed by fire, *a corresponding deduction should be made and allowed* in the rent of the premises. By another supplemental agreement, the rent was increased to $1,525 per annum, in consequence of certain enlargements made, but payable in the same manner. On the 24th day of August, 1854, the demised buildings were wholly and totally destroyed by fire, but no effort was made to rebuild them by either party. On the 25th day of July, 1854, the plaintiff below paid the quarterly installment of rent in advance for the quarter commencing on that day, according to the terms of the lease; and this suit appears to have been brought to recover back the proportion of the rent so paid in advance, to the part of the quarter subsequent to the fire.

We do not propose to enter upon a very critical examination of the pleadings in this case. It is quite apparent that the question presented to the court below, and on which the judgment of that court upon the demurrer was based, as well as the estimate of the damages then made, was founded, was whether or not, in case of a total destruction by fire, the lessees could recover back any installment of rent, or proportion thereof, paid in advance at the commencement of the quarter, according to the terms of the lease, and the destruction occurring before the expiration of such quarter.

It seems to us that the plaintiff below has mistaken the import of the covenant in the lease, upon the assumed breach of which his cause of action is based. The language of the covenant referred to is; "and for such time as the said Tafft and Spurr (the original lessees) shall be deprived of *any portion* of the buildings so destroyed by fire, a *corresponding* deduction shall be made and allowed, *in the rent of the premises.* There is no covenant to refund the rent already paid in case of a partial or total destruction by fire. The covenant simply is, that in case the lessee shall be deprived of any portion of the building destroyed by fire, a corresponding deduction should be made in the rent of the whole premises. When another quarter day should arrive, the lessee could claim his deduction, but the lessor did not agree to refund rent already due and paid. In case one or more rooms should be rendered useless by fire, the lessee could not claim a

deduction of any portion of the rent due, payable and paid on the preceding quarter day, but he could claim a corresponding deduction from the rent which would become due, and payable on the next quarter day. That this deduction was to be made from rent to accrue, and not from rent already accrued and paid, is obvious from the fact that there is no covenant to repay; from the fact that there is a covenant to repair and restore; and from the fact that in case of neglect of the lessor to repair and restore, an option is given to the lessees to repair and restore; and from the further fact that there must necessarily be an accounting of the time and extent of deprivation, its proportion to the whole premises in value, and to the whole amount of rent to be paid. During all this time, a part of the premises might be available, or if the covenant was intended to cover a total destruction, the land still remained.

On the quarter day preceding the 24th day of August, A. D. 1854, the quarterly rent became due and payable. The defendants might then have sued for and recovered the amount. It was payable absolutely and unconditionally, the same as any other debt, and was paid without any condition or reservation whatsoever; and though the subsequent fire and destruction thereby might, perhaps, be a good defence against a demand for the next quarterly installment, it certainly cannot be construed into a covenant to refund the rent already due, and paid according to the terms of the lease, or a rule of damages for an alleged breach of covenant to repair. Indeed the rule of damages for a breach of covenant to repair, is prospective, looking to the future profits, and future value of the leasehold estate; the rule of damages for a breach of covenant to deduct a corresponding amount from the rent, in case the lessee should be deprived of any portion of the building, is only partial and temporary, and damages for a breach of the one covenant cannot be predicated upon an alleged breach of the other.

The pleader in this case, seems to have construed the covenant to make and allow a corresponding deduction from the rent, in case the lessee should be deprived of any portion of the building, into a covenant to refund in such a contingency, the rent already paid according to the terms of the lease; and it is evident that such is the view which the court below took of the case. We

cannot so consider it and are compelled to reverse the judgment rendered below. It seems to us as quite plain that there is no covenant to refund any portion of the rent already paid, but that the covenant relied on has reference to rent to accrue in the future, not yet paid, from which the deduction should be made. As time advanced, after and during the continuance of the privation, the rate of deduction would, or could be noted, and when the next quarter day arrived, a proportionate deduction would be made up to that time; if it still continued, a corresponding deduction would continue to be made until the repair should be completed and the use restored. But this is a very different matter from refunding rent already due and paid.

Since the law of distress for rent has fallen into disuse, or has been abolished in many of the states, the practice of demanding and paying rent in advance has become very general. But the law applicable to landlord and tenant remains essentially the same in most respects, in regard to waste, repairs, destruction of the premises by fire, &c. At common law, destruction of the premises by fire did not excuse the payment of rent. Certainly it would be an unauthorized stretch of construction to convert a covenant to deduct rent proportionably in case of a partial destruction, into a covenant to refund rent already paid, though it is perfectly competent for the parties to make such a covenant if they desire; but they must do so themselves, for the courts cannot do it for them. In some cases advance payment of rent may operate hardly upon the tenant; but it is in his power to provide ample protection by the terms of his lease, and if he fail to do so, and agrees to pay his rent in advance without qualification, and does so, he covenants and pays at his own risk voluntarily, and the courts cannot relieve him.

It was contended on the argument, that the assignment of the breach of the covenant to restore and repair, is sufficient to support the declaration and the judgment rendered upon it. If it were not perfectly apparent from the declaration and the whole record, that the breach relied upon, and upon which judgment was rendered, was the refusal to refund that portion of the rent which corresponded to the portion of the quarter subsequent to the fire, there might be *an excuse for seeking after some pretext* on which the judgment could be sustained in order to support the

Cross and Shepardson vs. Button.

alleged, and perhaps real, equity of the case. But the manner of assigning the breach or breaches, the causes of demurrer alleged, and the amount of the judgment, as well as the whole burden of the argument here, leave no manner of doubt that the whole claim of the plaintiff below was based upon his assumed right to have that portion of the quarter's rent correspondent with the portion of the quarter subsequent to the fire, refunded by the defendants below. There is. no doubt that was the subject of discussion and controversy in the court below, as it was in the argument of the case here, and was and is the very matter fairly presented by the pleadings. This is also apparent from the fact that the court proceeded to assess the damages, which upon this view of the case, was proper enough, as it depended upon mere computation, but which in the other view could not have been so done, as to ascertain the damages upon a breach of the covenant to repair and restore would require a different procedure.

Whether or not the covenant to repair or restore has any further extent than to enable the lessees to do so after thirty days in case the lessors should neglect or refuse, and to remunerate themselves out of the rent to accrue, it is not necessary now to determine, though such is the construction we are inclined to think ought to be put upon it.

We are satisfied that the lease does not authorize any claim for the repayment of the rent, or any portion thereof already paid according to the terms of the lease, though the building may have been either in whole or in part destroyed by fire.

Judgment reversed, with costs, and cause remanded, for further proceedings according to law.