COPELAND and another, Appellants, vs. GOLDSMITH, Respondent.

*September 1 — September 20, 1898.*

*Landlord and tenant: Construction of lease: Reduction in rent: Covenants: Abrogation.*

1. A provision in a lease that if, during the term thereof, the lessor should rent any office fronting on a certain street for a less rate per square foot than the lessees were to pay, "such reduction shall also be made to lessees for term of this lease," is not a cove-

Copeland and another vs. Goldsmith.

nant to refund any portion of the rent paid before the lessees be-
came entitled to a reduction, but refers only to rent accruing
thereafter during the remainder of the term.

2. At the time of the assignment of such lease by the lessor, said lessees
were not entitled to any reduction in rent. Afterwards an agree-
ment was made between the assignee and the lessees, reciting that
disputes had arisen as to the leasing of portions of the building at
lower rentals, that claim had been made against the lessor on ac-
count thereof, and that both parties desired to agree upon a fixed
sum so as to avoid disputes, which sum should be in lieu of the
rent reserved under the lease, and fixing the lessee's rent at a cer-
tain reduced sum. *Held*, that such agreement was a substitute
for, and entirely abrogated, the covenants of the original lease as
to the rent reserved and the rights of the parties thereunder.

APPEAL from a judgment of the superior court of Milwau-
kee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

Plaintiffs rented offices of defendant, in the Goldsmith
Building, in Milwaukee, for a term of five years from May 1,
1893. The offices fronted on Wisconsin street. The rent
was fixed at $1,011.25 per annum, being at the rate of $1.25
per square foot. The lease was under seal. Among its pro-
visions were the following: "It is hereby understood and
agreed that in case the lessor should, during the term of
this lease, rent any office on   .   .   .   the Wisconsin   .   .   .
street front at a less rate than now demanded, to wit,   .   .   .
one dollar and twenty-five cents per square foot on Wiscon-
sin street front,   .   .   .   exclusive of water, light, and jan-
itor service, when same are required, *such reduction shall also
be made to lessees for term of this lease.*"   "It is hereby fur-
ther expressly stipulated and agreed, by and between the
parties hereto, that the words 'lessor' and 'lessee,' whenever
herein occurring and used, include and bind or benefit the
successors, heirs, assigns, executors, administrators, and rep-
resentatives of the lessor and lessee, respectively, as if each
time fully expressed."

At the time this lease was made the premises included in
the lease were incumbered by a mortgage for $190,000, pre-

viously executed by the defendant to the Connecticut Mutual
Life Insurance Company.   One of its provisions was to the
effect that, in case of default in payment of interest, or of
failure to pay the taxes or keep the property insured, then
the whole amount secured by the mortgage should, at the
option of the company, be deemed to have become due, with
the right of the company to foreclose the mortgage by suit,
or to sell the property without suit, at public auction.   The
defendant made default in respect to interest, taxes, and in-
surance, and the mortgagee threatened to foreclose.   Instead
of doing this, on February 28, 1896, the parties to the mort-
gage entered into an arrangement in writing, by the terms of
which the company agreed to postpone foreclosure proceed-
ings for at least two years, and the defendant consented that
the mortgagee should at once take possession of the premises,
with "the right to assume the exclusive management of said
building, to reduce the rentals of the present tenants hold-
ing leases, to rent the said building or any portion thereof
at such prices and on such terms as its agents may, in the
exercise of reasonable discretion, determine upon," and "to
receive all rents accruing after the 29th day of February,
1896."   There were also at that time mechanics' liens on
the property aggregating over $46,000, which the company
agreed to purchase, and proceed to final decree, but there
was to be no sale until the expiration of two years.   The
company took immediate possession of the property, and
proceeded to adjust the rentals charged the tenants then in
possession.

On March 2, 1896, the company and plaintiffs entered into
a written agreement, reciting the situation, and stating that
"whereas, disputes have arisen as to the leasing of a portion
of said building at lower rates, and claim is made against
*Goldsmith* on account thereof;" and "whereas, said first
party is now the holder of said lease as mortgagee in pos-.
session, and both parties hereto desire to agree on a fixed

sum as rental, so as to avoid such disputes during the time that said first party holds said lease as aforesaid, which sum shall be in lieu of the sum reserved in said lease for such time;" and thereupon it was agreed that plaintiffs' rent should be reduced from $1,011.25 to $686.70 per annum, or from $1.25 per square foot to ninety cents, to take effect from March 2, 1896. Afterwards the company rented an office fronting on Wisconsin street to one Mrs. Mayer at the rate of ninety cents per square foot from May 1, 1896. Thereafter the plaintiffs commenced this action against *Goldsmith*, claiming that, under terms of the original lease, the reduction in the rent should apply to the entire term of the lease, and that they, having paid him at the rate of $1.25 per square foot for the time he held the lease, were entitled to recover from him the difference between the amount they had paid and what the rent would have been at the reduced rate. It was admitted on the trial that plaintiffs had paid *Goldsmith* $2,121.47, and that the rent at the reduced rate would have been $1,945.65, or a difference of $175.82.

The facts substantially as stated were shown on the trial, and at the conclusion of the evidence both parties moved for a direction of a verdict. The court granted defendant's motion, and from a judgment in his favor this appeal is taken.

For the appellants there was a brief by *Ryan, Ogden & Bottum*, and oral argument by *L. M. Ogden*.

For the respondent the cause was submitted on the brief of *Monroe & Richardson*.

BARDEEN, J. The ruling of the trial court was manifestly correct upon two grounds:

1. Contracts will always be construed to give effect to the entire subject matter, in accordance with the obvious intention of the parties. The real point to be attained is to ascertain the meaning and understanding of the parties, as

shown by the language used, when applied to the subject matter. Under the terms of their lease, plaintiffs were to pay rent in advance, at an agreed rate. If, during the term of the lease, the lessor should rent any office on the Wisconsin street front for a less sum than plaintiffs were paying, "such reduction shall also be made to lessees for term of this lease." Lessees paid their rent at the prescribed rate during the time the lessor held the premises. After the assignment of the lease to the insurance company, one of the offices on the Wisconsin street front was leased at a rate less than that plaintiffs had been paying. They had paid their rent to the lessor at the old rate, and now claim that, under the clause of the lease quoted, they may recover from him the difference between the amount they have paid and what they would have paid at the reduced rate. In other words, they insist that this clause in the lease must be construed into a covenant to refund rent collected at the old rate. In support of this contention, they say there cannot be a reduction "for term of this lease" unless they are paid back a portion of the rent collected. We cannot agree with this construction. It seems to us quite plain that there was no covenant to refund any portion of the rent paid, but that the covenant relied upon has reference to rent to accrue during the remainder of the term. The case of *Cross v. Button*, 4 Wis. 468, is closely in point.

2. It is conceded that, up to the time of the assignment of the lease to the insurance company, plaintiffs were not entitled to any reduction in rent. At that time liens to the amount of over $46,000 were in process of foreclosure, which were paramount to the claims of all parties. *Goldsmith* was in default on his mortgage, and foreclosure was threatened. The insurance company stepped in and agreed to take up the outstanding liens, and to forego pressing its foreclosure for two years. Then it was that the agreement between the company and plaintiffs was made. This agreement re-

cites that disputes had arisen as to the leasing of portions of the building at lower rentals, that claim is made against *Goldsmith* on account thereof, and that both parties desired to agree upon a fixed sum so as to avoid disputes. Thereupon plaintiffs' rent was fixed at ninety cents per square foot, beginning March 2, 1896, and the sum aforesaid was to be in full payment of and in lieu of the sum stipulated in the original lease. This agreement was a substitute for the covenants contained in the original lease as to the rent reserved and the rights of the parties thereunder. By it the plaintiffs agreed to pay a definite sum absolutely, without reference to the terms that might be granted other tenants, and without qualification or reservation. The covenants in the original lease with reference to rent reservations became entirely abrogated. The fact that thereafter a room was rented at a less rate, on the Wisconsin street front, did not revive these defunct covenants.

Under no theory of the case are we able to discover any right in the plaintiffs to maintain this action.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.