## MINNEY et al. v. SCHARBAUER. *
### (No. 11572.)

(Court of Civil Appeals of Texas. Fort Worth. May 22, 1926. Rehearing Denied June 19, 1926.)

1. **Landlord and tenant** ⚌108(1)—Lessor held entitled, under lease, to give notice of default in payment of February rent and balance of January rent, after deducting for damage for fire in January, and to declare forfeiture on lessee's failure to pay, where rent had been due and unpaid for ten days.

Lessor *held* to have right to give notice of default in payment of February rent and of balance on January rent, after deducting damage for fire which occurred in January, and to declare forfeiture on lessee's failure to pay, where lease permitted notice of default, when rent, which was due on the first of month, was due and unpaid for ten days, or for any other breach.

2. **Landlord and tenant** ⚌192(1).

Lessee *held* liable for that part of month's rent accruing prior to fire.

3. **Landlord and tenant** ⚌230(1)—Petition alleging that leased premises were duly repaired and restored to tenantable condition after fire, and proof that repair work was done at night, held to show that leased office building was restored to tenantable condition after such fire.

Pleadings and proof *held* to show that leased office building was restored to tenantable condition after fire, and at time of lessor's notice of default, where petition pleaded that lessor "duly repaired the damage caused by such fire, and restored such leased premises to tenantable condition," and proof showed repair work was done at night so as not to disturb the tenants during day.

4. **Appeal and error** ⚌544(1).

Ruling of trial court on motion for continuance will not be revised, in absence of bill of exceptions, in view of rules 55 and 70 for district and county courts, Harris Rules.

5. **Appeal and error** ⚌966(2)—Court's action on motion for continuance for absence of party will not be disturbed, unless he abuses discretion.

Court's action on motion for continuance for absence of party will not be disturbed, unless he abuses discretion, especially where witness for whose testimony continuance is asked is party litigant.

6. **Landlord and tenant** ⚌48(2).

Tenant's measure of damages, for lessor's breach of contract are profits, if any, which he would have realized.

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction October 27, 1926.

**7. Landlord and tenant ☞208(3), 238.**

Assignment of lease which was intended as mortgage will not render mortgagee liable for accrued rental in lessor's action after declaring forfeiture, but he is liable for costs, where he contests action.

**8. Mortgages ☞137.**

Title to mortgaged property remains vested in mortgagor, and mortgage is considered as mere security for debt.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by John Scharbauer against D. F. Minney and others. Judgment for plaintiff, and defendants appeal. Affirmed.

A. J. Power and W. F. Kelly, both of Fort Worth, for appellant⌐.

Phillips, Trammell & Chizum, of Fort Worth, for appellee.

BUCK, J. This suit arose out of a rental contract of what is known as the "Worth building" in the city of Fort Worth, in which John Scharbauer was lessor and D. F. Minney was lessee. The contract was dated August 28, 1922, and is quite lengthy, covering some 14 pages of typewritten matter. By the terms of the contract the lessee agreed to pay a monthly rental, in advance, of $1,400, and the life of the contract was 20 years, making the total rental to be paid $336,000. The contract provided that the four upper floors and a part of the ground floor, including the elevator and lobby, were covered by the contract.

For the purpose of comparison, we set out the two provisions of the contract, the first under the heading of "Term of the Lease and Rental," and the second under the heading of "Termination of Lease," in parallel columns:

| Section 2, Subd. 1. | Section 1, Subd. 11. |
|---|---|
| "To have and to hold the same with the appurtenances thereto, unto the said lessee from the 1st day of November, 1922, for and during the full term of twenty years next ensuing and fully to be completed and ended on the 31st day of October, 1942, and the said lessee yielding and paying therefor the sum of three hundred and thirty six thousand ($336,000) as hereinafter provided. | "If the default be made in any payments by the lessee, or if default shall be made in the fulfillment of any of the covenants of this lease by the lessee, or if the lessee shall fail to perform or keep this lease, lessor shall have the right forthwith to terminate this lease, at his option, in the following manner: Lessor shall send written notice of such default, which said notice shall be delivered to the lessee in person or mailed by registered mail to him at his last known address, or posted in a conspicuous place on the premises, which notice shall advise lessee of the nature of the default claimed by the lessor, and the lessor shall have the option of using any of the three |
| "Provided, however, that if said rent, or any part thereof, shall remain unpaid for ten days after it shall become due as hereinafter set out, or should the lessee breach or default in the performance of any of the other covenants herein contained, on his part to be performed, lessor shall | |

methods above specified to bring this notice to the attention of the lessee. If lessee, after receiving this notice or posting thereof, as above provided, refuses, fails or neglects to cure, correct, pay or discharge said default within ten days, lessor shall have the right at once to take possession of the premises, and to take and claim and retain all the building on the premises and to treat the lessee as his tenant at sufferance, and may at once remove him and any and all occupants and tenants, or persons in possession of, or claiming of said premises, or any part thereof under the lessee.

give written notice to lessee of such default either by delivering to the lessee in person or by mailing same by registered mail to lessee's last known address, or by posting such notice in a conspicuous place on the premises (lessor to have the option of using either of the three methods), such notice stating the nature of the default claimed by lessor, and, if, within ten days after such notice has been posted, or ten days after such notice has been received by lessee, lessee shall fail to pay, correct or perform the covenants or covenant so specified in lessor's notice, it shall be lawful for said lessor, at his option, to terminate this lease, and, without notice, demand or suit, to re-enter into the said premises and to have the same again, repossess and enjoy, as in his first and former estate, and, thereupon, this lease and everything therein contained on the lessor's part to be done and performed, shall cease, determine and be utterly void.

"Lessee has inspected the premises herein leased, and agrees to lease them as they stand.

"The said lessee covenants and agrees with the lessor as follows: Lessee shall pay rent to lessor, or his authorized agents, at such agent's office in Fort Worth, Tex., as follows: On the first day of November, 1922, the sum of fourteen hundred dollars ($1,400), and a like amount on the first day of each and every month thereafter, until the whole sum of three hundred and thirty-six thousand dollars shall have been fully paid.

"If possession of the leased space is given prior to November 1, 1922, the rental shall commence and be paid on the day possession is given, and thereafter shall be paid monthly in advance on the same day of each and every month until the whole sum of three hundred and thirty-six thousand dollars ($336,000) shall have been fully paid, and the lease shall terminate twenty years from the date possession is so delivered."

"Should this lease be terminated by lessor for lessee's default, lessor shall have and possess as his own property all improvements and fixtures placed in the building by lessee; and lessee shall not be liable for any rentals or damages to the lessor accruing subsequent to such termination of this lease."

The contract further provided that the lessee should deposit in the bank the sum of $10,000, to be used, under checks issued by

lessor, upon statements made by lessee, for the expenses to be incurred in the changing of the building from a hotel building to an office building. It was further provided that the lessee, at his own expense, should maintain the building in its then state and condition, less ordinary wear and tear, and damage by fire or the elements; or unavoidable casualty, excepted, throughout the term of this lease. That lessee was to have the privilege of removing any of the equipment, partitions, doors, walls, or any part of the building necessary to make improvements and changes and additions, without the lessor's consent, in the leased premises, excepting the boilers and down pipes in the basement, which he might desire to remove, and to use the same in any other part of the building, or otherwise dispose of the same, without the consent of lessor, excepting that all bath tubs, toilets, and lavatories which he might remove from their present location in the building and not use in any other part of the building, should, after 60 days time, be delivered to lessor or his agent, and be lessor's property; that during the term of the lease lessee was to have the privilege of making any repairs, alterations, improvements, or additions to the premises under lease which he might desire to make, without the consent of the lessor, provided such changes do not weaken the building or decrease the rental or selling value of the same, and lessor should be held harmless for any debts or obligations on this account incurred; that all such improvements, etc., shall revert to the lessor at the expiration or termination of the lease, without cost or liability of the lessor.

It was further provided that lessee should have the right to assign all or any part of his interest in the lease without the consent of the lessor, provided the lessee should be bound at all times throughout the term of the lease to the lessor to pay and perform all covenants he had made; provided that, when the lessor in writing accepts a specified assignee in lieu of the lessee as his tenant, lessee is to be discharged from any further liability under the terms of the lease. The lease contract further provided:

"If said leased premises shall be partially destroyed or rendered untenantable, during the term of this lease, by fire or the elements, without fault or default on the part of said lessee, the lessee shall pay no rent on the part of these premises damaged until they are restored to their original condition or to tenantable condition by the lessor. But it is expressly agreed and covenanted that lessor shall reconstruct or repair the damaged part of the leased premises as soon as possible, at his own expense.

"In the event the said leased premises shall be totally destroyed by fire or the elements, without fault or default on the part of said lessee or his tenants, this lease shall be canceled, and become null and void, and lessor shall repay to lessee the full cost of all improvements, both material and labor, that the lessee has, up to the time of the damages by fire or the elements, placed in the building. Provided, however, that when making this repayment, lessor shall deduct from the full cost paid by lessee a charge for depreciation on the said improvements at the rate of five per cent. per annum, this depreciation beginning on the date said improvements were placed in the building and extending to the time of their destruction by fire or the elements."

It was further provided under paragraph 2, § 2, that—

"Should this lease be terminated by lessor for lessee's default, lessor shall have and possess as his own property all improvements and fixtures placed in the building by lessee, and lessee shall not be liable for any rentals or damages to the lessor accruing subsequent to such termination of this lease."

The evidence shows that the rentals provided were paid by the lessee with more or less regularity until August, 1924, when lessee gave lessor a note for $1,412.50 for the August rent, and for $12.50 for rent of the alley in the rear. This note was also signed by Mrs. Emily Polk and W. E. Lagow.

The evidence further shows that the lessee assigned a one-sixth interest in the lease to W. E. Lagow, and a one-third interest therein to Mrs. Emily P. Polk, and on October 18, 1923, sold and assigned to John R. Griffin the remaining one-half interest in the lease, which assignment it is claimed by defendant Griffin to have been intended as a mortgage, for the purpose of securing him for advancements made to the lessee on the rental payments. The note given for the August rent was payable on or before December 1, 1924. The rent due on January 1, 1925, was not paid, nor was the note due on December 1, 1924, paid. On January 13, 1925, a fire occurred, starting in the basement, which had been occupied by the Y. W. C. A. as a cafeteria, and the building was considerably damaged thereby. By the terms of the contract, the lessor, in case of a fire partially destroying the building, was required to restore the building to its former condition "as soon as possible." On February 17th the lessor and his son-in-law and agent, W. C. Stonestreet, and the lessee and his assignees met and agreed on the amount to be deducted from the January rent, which was $859.30. On March 6, 1925, John Scharbauer, filed suit to forfeit the lease contract, making Minney, Lagow, Griffin, and Mrs. Polk parties defendant.

The trial petition is the second amended original petition, which was filed on June 10, 1925. In that petition plaintiff alleged that, on account of defendant Minney's failure to pay the rent due on August 24, 1924, plaintiff extended the payment thereof until December, 1924, and that the lessee gave the note hereinabove mentioned for such August rental, including the $12.50 for one-half of

the rental of the alley, one-half of which alley appears to have been owned by the lessor. He alleged in said petition that the January rental, due on January 1, 1925, had not been paid, and that a fire occurred on January 13th thereafter, and that an agreement was made by the lessor and the lessee and his assignees as to the amount that should be deducted from the January rent on account of the losses incurred thereby on the part of the lessee, and that such agreed amount was $859.30, leaving $540.70 due on the January rent, which amount defendants wholly refused and failed to pay. That an amount of $1,400 became due and payable February 1, 1925, and said amount had not been paid, for which he sued. He further sued on the note for $1,412.50, given for rent of August, 1924.

Prior to the judgment, defendants W. E. Lagow and Mrs. Emily P. Polk filed their motion and statement that they did not desire to defend the suit for cancellation of the lease, nor to recover damages against plaintiff, and agreed that the court might enter judgment canceling and terminating .such lease as of March 4, 1925, and rendered judgment against them on defendants' cross-action for damages.

The cause was submitted to a jury on special issues, which special issues, together with their answers thereto, are as follows:

"(1) State and find from the evidence whether or not, at the time this suit was filed, on March 6, 1925, the defendants owed to the plaintiff, John Scharbauer, any amount as past-due rental for the leased premises in question. Ans. Yes.

"(2) State and find from the evidence whether or not the plaintiff, John Scharbauer, or W. C. Stonestreet, agreed to accept the note dated August 1, 1925, executed by the defendants D. F. Minney, Mrs. Emily P. Polk, and W. E. Lagow, in payment of the rent due August 1st. Ans. No.

"(3) Did the plaintiff, John Scharbauer, as soon as possible after the fire, under all the circumstances shown by the evidence, repair the damage caused by the fire on January 13, 1925, and restore the premises to their original condition or to a tenantable condition? Ans. Yes.

"(4) Find and state from the evidence whether or not the plaintiff, John Scharbauer, and defendants agreed upon the amount of $859.30 as the amount of rebate due under the terms of the lease contract to the defendants. Ans. Yes."

Upon the answers of the jury, as above shown, the court entered judgment for plaintiff for the amount of the note for the rent for August, 1924, and for the balance of the rent found by the jury to be due for January, 1925, and for the February rent, 1925. The judgment recited that, inasmuch as the un-·contradicted evidence showed that plaintiff had released the defendants Mrs. Emily P. Polk and W. E. Lagow from liability on such

indebtedness, and that they were together liable for one-half of the same, judgment was entered against D. F. Minney for $843.77, being one-half of the principal, interest, and attorneys' fees due on the note for the August rent, with interest thereon from June 10, 1925, until paid at the rate of 10 per cent., and $992.72, being one-half of the rentals due for January and February, 1925, with interest at 6 per cent. thereon from June 10, 1925. It was further ordered, adjudged, and decreed that plaintiff recover from all the defendants a judgment canceling and terminating the lease, and divesting out of them any interest, right, or title thereto. Plaintiff recovered a judgment for costs against Minney and Griffin, including compensation for the receiver, Robert Sansom, who had been appointed by the court upon application of the plaintiff on March 14, 1925, and who had taken charge of the building, under the orders of the court, pending litigation. No money judgment was entered against defendants W. E. Lagow and Mrs. Emily P. Polk. The judgment ordered and directed that the receiver pay all indebtedness of whatsoever kind and character due and owing by him, and that he file his report as of this date, showing all receipts and disbursement received and expended by him in this behalf, and the court reserved jurisdiction to fix and determine compensation of such receiver, and to settle such accounts upon the filing of such report. The report of the receiver is not shown in the record.

## Opinion.

[1] In appellant's first and second propositions, complaint is made of the failure of the plaintiff to allege and to show that he had complied with the requirements provided in the contract with reference to the termination of the lease, and of the right of declaring a forfeiture, and that he did not allege or prove that conditions had arisen authorizing him to declare a forfeiture at the time he posted the notice on February 20, 1926, calling attention to the default in the payment of $1,400 due on February 1, 1925, and $540.70, balance due for the January rent. Section 2, subd. 1, of the contract hereinabove quoted, provides:

"That if said rent, or any part thereof, shall remain unpaid for ten days after it shall become due as hereinafter set out, or should the lessee breach or default in the performance of any of the other covenants herein contained; on his part to be performed, lessor shall give written notice to lessee of such default either by delivering to the lessee in person or by mailing same by registered mail to lessee's last known address, or by posting such notice in a conspicuous place on the premises," etc.

This section of the contract further provides that, if the lessee shall fail to pay, correct, or perform the covenant or covenants

so specified in lessor's notice, "it shall be lawful for said lessor, at his option, to terminate this lease, and, without notice, demand, or suit, to re-enter into the said premises and to have the same again, repossess and enjoy, as in his first and former estate, and thereupon this lease, and everything therein contained on the lessor's part to be done and performed, shall cease, determine, and be utterly void."

It was further provided in the contract that the rental for any current month should be paid on the first of the month, but that the lessee had the right to wait until the 10th thereof before being in default. As the fire occurred on the 13th of January, 1925, lessee was in default at the time of the fire for the January rent. Therefore we think that the appellee had the right, on February 20th, to give notice to lessee of lessee's default in the payment of the balance due for the January rental, and the rental for February, both unpaid. We further conclude that, upon the failure of lessee to pay the past due rental within 10 days, the lessor had the right to forfeit the lease, as he did, on March 4, 1925, delivering a copy of the notice to the agent of the defendants. We think that the facts show that the forfeiture was legally declared, and notice thereof given to the defendants below, even though, as claimed by appellant, lessor had waived his right to declare a forfeiture by reason of the failure to pay the rent for August, 1924, or to pay the note given therefor, payable December 1, 1924. While we see no substantial difference in the two provisions shown in parallel columns herein above, yet we think that the lessor has complied with the terms provided in each.

[2] Under the decisions in a number of jurisdictions, the fire, on January 13, 1925, did not relieve appellants from paying any part of the $1,400 installment, which became due January 1, 1925, and was 13 days past due at the time of the fire. Cross v. Button, 4 Wis. 468; Harvey v. Weisbaum, 159 Cal. 265, 113 P. 656, 33 L. R. A. (N. S.) 540, Ann. Cas. 1912B, 1115; 16 R. C. L. § 476, p. 695; Lieberthal v. Montgomery, 121 Mich. 369, 80 N. W. 115; Craig v. Butler, 83 Hun, 286, 31 N. Y. S. 963, affirmed 156 N. Y. 672, 50 N. E. 962. In other jurisdictions decisions more liberal to the lessee have been rendered, holding that a fire, under similar circumstances to the case at bar, does not require the lessee to pay for the entire month and await an adjustment for the time for which rent was not due, pending the untenantability of the premises, but all hold that the lessee is liable for the rent accruing prior to the fire. Ware v. Hobbs, 222 Mass. 327, 110 N. E. 963, L. R. A. 1916F, 276; Carley v. Liberty Hat Mfg. Co., 81 N. J. Law, 502, 79 A. 447, 33 L. R. A. (N. S.) 545; Rich v. Smith, 121 Mass. 328; Porter v. Tull, 6 Wash. 408, 33 P. 965, 22 L.

R. A. 613, 36 Am. St. Rep. 172, and cases cited in Ann. Cas. 1912B, 1119, and note.

It will be remembered that the issue was submitted to the jury as to whether the plaintiff agreed to accept the note dated August 1, 1924, executed by the defendants Mrs. Emily P. Polk, D. F. Minney, and W. E. Lagow, in payment of the rent due August 1st, and that the jury answered, "No." It was the contention of plaintiff below that the taking of the note was a mere extention of the time in which the rent might be paid without becoming past due, and it was the contention of the defendants that the taking of the note waived the right of forfeiture. But we do not think it necessary to decide this question, as the rental due for February and the balance for the rent for January, 1925, both past due and unpaid, authorized the giving of the notice, and, upon the failure of the defendant to pay said amounts within 10 days, the plaintiff had the right to forfeit the lease. There was no offer or effort made by any of the defendants to pay these rentals. Therefore we overrule these propositions.

[3] The lease contract provides:

"If said leased premises shall be partially destroyed or rendered untenantable, during the terms of this lease, by fire or the elements, without fault or default on the part of said lessee, the lessee shall pay no rent on the part of these premises damaged until they are restored to their original condition or to tenantable condition by the lessor."

It is urged by appellant that neither by pleadings nor proof did the plaintiff below show that at the time the notice of default was posted, on February 20, 1925, the building had been restored to a tenantable condition, and that such allegation and proof was necessary as a ground for forfeiture. The trial petition pleaded that, after the fire, "plaintiff duly repaired the damage caused by such fire, and restored such leased premises to tenantable condition, and said premises were, after such restoration, in better condition than before. Defendants claimed a reduction in rent on account of such fire during the time when said premises were being restored and repaired, and demanded of plaintiff that he deduct from the rental due the sum of $859.30, which defendants claimed they were entitled to." The evidence does not show positively when the last of the work of restoration was done. It does show that those who had the restoring of the building in charge, and who did the work, tried to co-operate with the lessee and his tenants, in order that the tenants might not be disturbed during the day, and did much of the work at night. The evidence further shows that on February 17th an agreement was reached by the terms of which $859.30 was deducted from the January rent. The jury so found. Therefore we conclude that there is no merit in these propositions.

[4] Under the eighth proposition, complaint is made of the action of the trial court overruling appellants' motion for a continuance, in which it was set forth that, by reason of an amended pleading filed for the first time, the testimony of defendant Minney became material, and that Minney was in California, where the evidence shows he had gone to live. There is no approved bill of exceptions in the record to the action of the court in overruling this motion, though there is a statement in the record entitled "Defendants' Bill of Exception No. 1," but it is not approved nor even signed by the trial court.

[5] The ruling of the trial court on motion for continuance will not be revised in the absence of a bill of exception. T. & P. Ry. Co. v. Mallon, 65 Tex. 115; rules 55 and 70 for district and county courts, Harris Rules; Cranfill v. Fidelity & Deposit Co. of Md. (Tex. Civ. App.) 143 S. W. 233, writ of error denied; Stewart v. Poinboeuf (Tex. Civ. App.) 270 S. W. 885. Moreover, we do not think the amended pleadings raised any issue of fact calling for defensive evidence not called for by former pleadings. A motion for continuance because of the absence of a party is addressed largely to the discretion of the court, and his action thereon will not be disturbed, unless an abuse of discretion is shown. Berry v. Hindman, 61 Tex. Civ. App. 291, 129 S. W. 1181, writ refused; Costley v. Chapman Com'r (Tex. Civ. App.) 262 S. W. 543. Especially is this true where the witness for whose testimony the continuance is asked is a party litigant. Adams v. Overland Automobile Co. (Tex. Civ. App.) 202 S. W. 207; Turnbow v. Southern Engine & Pump Co. (Tex. Civ. App.) 237 S. W. 321.

[6] We have examined and considered every assignment and proposition thereunder urged by appellants, though we have not discussed all, but we find no reversible error shown. The evidence shows that defendant Minney and his assignee, Griffin, had at various times stated that the building was not producing enough revenue to meet the maintenance expenses, and each had asked for a release from the contract, and for a modification thereof. Defendants themselves pleaded for a cancellation of the contract. We do not think, in any event, defendants showed any equitable defenses against plaintiff's cause of action, or that they were injured by the forfeiture declared by plaintiff, and for which judgment was given. The findings of the jury, which are not attacked, show that appellee repaired the building as soon as possible after the fire. All the parties agreed as to the amount to be allowed Minney by reason of the fire; said amount being practically the rental for the balance of the month. The evidence shows that, subsequent to said agreement, appellants made no effort to pay the accrued rental or the amount of the note sued on. Under the terms of the contract, "all such improvements, alterations, repairs, and additions shall revert to the lessor at the expiration or termination of this lease, without cost or liability to the lessor." Appellants' measure of damages, if any, was not the expense of performing his contract, but the profits, if any, which he would have realized therefrom. Orange Hotel Co. v. Townsend, 62 Tex. Civ. App. 1, 130 S. W. 701; 8 R. C. L. 454, § 24. "The measure of damages in case of a breach of a contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed." 17 Corpus Juris, 847, § 168. But he is not entitled to recover more by reason of the breach than he would have made by a performance of the contract. Id. The facts support the conclusion that a continuance of the contract would have been at a loss to appellants. Therefore all assignments are overruled, and the judgment for appellee against appellants is affirmed.

[7, 8] Appellee cross-assigns error because the trial court did not render judgment against appellant Griffin as well as against appellant Minney for one-half of the accrued rental and the note. This action on the part of the trial court was evidently on the theory that the assignment to Griffin was intended as a mortgage. If the assignment was merely a mortgage, and there is some evidence to support that theory, the mortgagee in this state would not be responsible for the failure of Minney to pay the rental. 36 Corpus Juris, 376, § 1236, and authorities cited under notes 15 and 16; Cockrell v. Houston Packing Co., 105 Tex. 283, 147 S. W. 1145. In Texas the title to the property remains vested in the mortgagor, and the mortgage is considered as a mere security for the debt. In such jurisdictions, the mortgagee must take possession of the premises and occupy it in order to be responsible for the payment of rents. Griffin claimed to be acting only as manager for Minney, and the trial court was authorized to absolve him from the rental charges. But he was liable for the costs, having contested the action. We will not disturb this part of the judgment.

Judgment affirmed.