ORANGE HOTEL COMPANY v. J. C. TOWNSEND ET AL.

Decided June 24, 1910

**1.—Landlord and Tenant—Contract for Year—Evidence.**

Evidence stated and held sufficient to support a finding by the trial court that the rental contract in controversy was for the term of one year, and not at will of the parties.

**2.—Rental Contract—Breach—Measure of Damages.**

For the breach of a rental contract the law allows the aggrieved party such an amount of damages as will compensate him for the injury sustained. The damages can not be greater than the rent profits of the business for the unexpired portion of the term; and in arriving at such profits it is proper to deduct the gross expenses from the gross receipts of the business for the period it was run, and from the average profits thus ascertained estimate the losses for the remainder of the term.

**3.—Same—Gross Receipts—Definition.**

By gross receipts of a business is meant actual receipts and such bills and accounts only as are collectible.

Appeal from the District Court of Orange County. Tried below before Hon. W. B. Powell.

*Geo. E. Holland* and *V. H. Stark,* for appellant.—The evidence in this case fails to show the existence of any rental contract for one year, or any other given period; but shows one terminable by either party upon reasonable notice to the other, and for the ending of which, by either party, no action for damages would lie in favor of the other. East Line & Red River Ry. Co. v. Scott, 72 Texas, 75; Texas Central Ry. Co. v. Newby, 41 S. W., 102.

The trial court erred in his first conclusion of law filed herein, in concluding that under the facts found by him and adduced on the trial there was a rental contract for one year between plaintiff and defendants. Patton v. Rucker, 29 Texas, 408; Summers v. Mills, 21 Texas, 78.

*Hart & Sholars,* for appellees.

McMEANS, ASSOCIATE JUSTICE.—The ·following statement of the nature and result of· the suit is made by appellant in its brief, and is adopted:

Vol. LXII Civil—1.

"This is an ordinary action of trespass to try title brought by appellant against appellees to recover certain lots in the city of Orange. A writ of sequestration issued, under which the property was taken in possession by the sheriff and, after the required lapse of time, replevied by the plaintiff. The title being in plaintiff is not a disputed issue.

"Defendants by their answer ask for actual and exemplary damages against plaintiff because of the wrongful issuance and levy of the writ of sequestration on the theory that they were in possession of the property under a verbal rental contract for one year, and the sequestration being issued before the expiration of the year and they being dispossessed under this writ, suffered the damages claimed on account of the breach of the rental contract as shown in the answer.

"The case was tried upon the cross-action of the defendants, no controversy being in the case as to the ownership of the property, and the trial before the court without a jury resulted in a judgment for the plaintiff for the property sued for, and in favor of the defendants against plaintiff for damages in the sum of $1,047.21. Conclusions of law and fact were filed by the trial court, and to the judgment and findings the plaintiff in open court excepted, etc."

By its first assignment of error appellant complains that the court erred in rendering judgment against it for $1,047.21, under the evidence adduced on the trial. It is urged in the proposition following the assignment that the evidence fails to show the existence of any rental contract for one year or for any other given period; but shows one terminable by either party upon a reasonable notice to the other, and for the ending of which by either party no action for damages would lie in favor of the other.

It was shown that the appellant, Hotel Company, is a private corporation. The court's fourth finding of fact is as follows:

"Some time in July, 1906, the defendant, J. C. Townsend, applied to J. W. Link, president of the Hotel Company, to rent the property. Nothing was done at this time. Later, during the same month, both of the defendants conferred with the president, J. W. Link, with reference to renting the said property. At that time it was the understanding and agreement of the directors of the Hotel Company that they would make no permanent arrangements, renting the property, and no definite or fixed lease of the same to any person, but would only rent it on trial. But this was not known to the defendants. The president of the Hotel Company, Link, at the time of this conversation, rented the property to the defendants for $75 per month, and nothing was said about any specified length of time. The said Link turned the defendants over to one of the directors, F. H. Farwell, for the purpose of having him show the defendants the property and premises and inspect its condition. That they, together with the said Farwell, did inspect the property, and finding its condition, the said Farwell, who was also a director of the Hotel Company, agreed to allow them the first two months' rent. The said Farwell did not make or undertake

to make any rental contract with defendants, assuming that all arrangements as to the renting of the premises had been attended to by the said Link.  But at the time of inspecting the property and after they had decided to take the property the defendants stated to said Farwell that they would try the property for one year at least, and went into possession of it with that understanding, expecting the lease to be reduced to writing, but was never done."

The twelfth finding of fact is as follows:

"I find that all former lessees of said hotel had the same for one year and that the defendant leased the hotel for one year." ·

The court states the following finding of fact as a part of its conclusions of law:  "I conclude that under the above facts the same constitute and make a rental contract between the plaintiff and defendants for one year and that the same was a valid contract for that time."

It was shown by the testimony of the defendant, J. C. Townsend, that at the time he inspected the hotel in company with Farwell, he told the latter that he would try the property for one year upon the terms agreed upon, and that Farwell's reply to this was that he would have the contract reduced to writing.

It was further shown by the testimony of J. W. Link, the president of the Hotel Company, that Farwell had authority to make such a contract.  There was other testimony which supported defendant Townsend's as to the effect of their negotiations while inspecting the property.

We think that the court's conclusion that a contract for the lease of the property for a year was not without evidence to support it, and the assignment raising the point must be overruled.

What we have said in disposing of the first assignment disposes also of the second and third, which present in substance the same question.

The trial court, by its tenth and eleventh findings of fact found as follows:

"I find that during the month of August, 1908, the gross receipts of the hotel were $666.65; gross expenses, $733.50.  For September, 1908, gross receipts, $1020.10; expenses, $1002.74.  October, gross receipts, $671.40; expenses, $1406.57.  In November, gross receipts, $1982.25; expenses, $1604.34.  December, gross receipts. $1581.45; expenses, $1350.74.  January, 1909, gross receipts, $1274.50; expenses, $1217.94.  February, gross receipts, $1356.30; expenses, $1039.64.  To March 15, gross receipts, $789. 35; expenses, $554.50.  I find that for the five months of October, November, December, January and February the total receipts of the hotel were $7865.95; the total expenses of the hotel were $6619.05; showing a profit of $1246.90 for the five months, averaging $249.38 per month.

"I find that there were four and a half months of unexpired time under the contract.  I find that they owed $75 rent for the month of February.  That for the four and a half months they could have made $1122.21 above the expenses of the hotel, from which take the $75 rent,

leaves $1047.21 as damages to the defendants by reason of the dispossession of the plaintiff.

"I find that embraced within the gross receipts above·are all moneys received by the Hotel Company, as well as all bills payable to it, whether paid or not. In fact, all charges made by the defendants while in the hotel business against all persons connected with the business from whatever source whatsoever. Hereby meaning to say that same includes the entire assets of the defendants, whether collected or not, and from these figures I arrive at the judgment rendered in this cause; and the other, the entire debt of the company, whether paid or not."

For breach of such a contract as the one in question the law allows to the aggrieved party such an amount as damages as will compensate him for the injury sustained. In no case can the damages be greater than the net profits of the business for the unexpired portion of the contract. In arriving at such profits it is proper to deduct the gross receipts from gross expenses of the business for the period in which the business was run, and from the average profits thus ascertained estimate the losses that have accrued to the complaining party for the balance of the term. Houston & T. C. Ry. v. Hill, 63 Texas, 387; Manning v. Grinstead, 90 S. W., 555; San Antonio v. Royall, 16 S. W., 1101.

But by "gross receipts" is not meant all charges made by the complainant, but actual receipts and such bills and accounts as are collectible. Uncollectible accounts should in no case be credited to the profits, but rather should be charged to the expenses of the business. It would manifestly be unfair to take into consideration all charges and accounts placed upon the books of the business, unless it be shown that they could in reasonable probability be collected, for otherwise the party guilty of the breach would be made an insurer of all accounts, whether improvidently made by the other party or not or whether the same were uncollectible, and therefore a loss and not a gain of the business. Hunt v. Reilly, 50 Texas, 104.

It seems that this rule was not observed by the court below, because it is expressly stated in the eleventh finding of fact that the court considered as embraced within the gross receipts all bills payable to the Hotel Company whether paid or not, and "in fact, all charges made by the defendant while in the hotel business against all persons connected with the business from whatsoever source, hereby meaning to say that same includes the entire assets of the defendants whether collected or not." It is true that the court does not say that he took into consideration any uncollectible accounts, but we think it is manifest from his findings that the question of their collectibility was not taken into consideration in arriving at the losses sustained by defendant.

The necessity of such a rule is emphasized by the letter written by the defendant, J. C. Townsend, to the Hotel Company on February 22, 1909, in which he stated, "Our books show that at the end of the first six months the expenditures exceeded the receipts $7338. We were that

much in the hole without allowing ourselves anything for services or salary, etc."

In explanation of this statement he testified: "As to my explanation about that letter, will say that sometimes we count our chickens before they are hatched. In the hotel business people don't always pay their bills. . . . I am sorry to say that some of our boarders are still owing; a good many of them we have collected on since that statement. When I mailed that (the letter) to Mr. Farwell I took all of the doubtful accounts and subtracted that from the cash and only figured on what I knew would be paid, and cut out all these other accounts. That is my explanation. If the accounts were not collected, then our books would show that on the 22d of February there was actual loss of $728. I did not make that statement then. As to what accounts were outstanding that have been paid that were due on the 22d of February, will say that I will have to see my son, Billy, to help me in that business."

Because the court, in estimating the damages sustained by defendants, erroneously included all the accounts on their books instead of those only that may have been shown to be collectible, the judgment of the court below must be reversed and the cause remanded.

The other assignments presented by appellant have been examined by us and we are of opinion that they point out no reversible error.

*Reversed and remanded.*