**KENNERLY et al. v. B. F. AVERY & SONS PLOW CO.   (No. 2886.)\***

Court of Civil Appeals of Texas. Amarillo. Nov. 9, 1927.

Rehearing Denied Dec. 7, 1927.

1. **Judgment** ⟨key⟩684—**Where tenant has constructive notice of lien, but is not party to foreclosure proceedings, he is not bound by decree rendered, or by subsequent proceedings in suit.**

Where suit is brought to foreclose prior lien on land, which prior lien was in existence, and of which tenant, who afterwards acquired lease, had constructive notice, and tenant is not made party to foreclosure proceedings, he is not bound by decree rendered, or by subsequent proceedings in such suit.

2. **Landlord and tenant** ⟨key⟩174—**Tenant could sue for damages for eviction, though he surrendered premises on demand of owner of paramount title after lien foreclosure to which he was not party.**

Where lien, of which tenant had notice, was foreclosed by holder, who demanded premises, tenant not being party to foreclosure action, and tenant surrendered premises, he could sue for damages for eviction, and was not required to pay off obligation which had become paramount title as against his landlord, or to contest such paramount title in suit by owner thereof, and thus be judicially evicted, since law does not require useless thing to be done before affording relief.

3. **Landlord and tenant** ⟨key⟩171(1)—**To constitute "eviction," there need not be physical expulsion or exclusion from demised premises.**

To constitute an "eviction," it is not necessary that there should be a manual or physical expulsion or exclusion from demised premises, or any part thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Eviction (of Tenant).]

4. **Landlord and tenant** ⟨key⟩171(3)—**Generally there can be no constructive eviction, unless tenant abandons premises on account of acts claimed to operate as eviction.**

General rule is that there can be no constructive eviction unless tenant abandons premises on account of acts or circumstances claimed to operate as an eviction.

5. **Damages** ⟨key⟩62(1)—**Party suffering damage must take reasonable precautions to minimize damages.**

Where party has been damaged, compensation is end of law; but party suffering damage is required to take all reasonable precautions to minimize his damages.

6. **Landlord and tenant** ⟨key⟩180(4)—**Where lease was not assignable, damage for eviction was measured by value of use of premises to tenant, not by market value of lease.**

Where lease was not assignable, it could not have market value, and damages for evic-

tion had to be measured by value of use of premises to tenant, and could not be fixed by measure of market value of right by which tenant held premises.

7. **Landlord and tenant** ⟨key⟩180(4)—**Tenant evicted was entitled to recover rent expense of premises suitable to transaction of its business and reasonable and necessary expense of moving.**

Evicted tenant was entitled, as an element of its damage, to recover rent expense of premises suitable to transaction of its business and expense of removing to its new location; but such expenses had to be shown to have been reasonable and necessary.

8. **Landlord and tenant** ⟨key⟩180(4)—**Lessor was charged with full knowledge of value of use of premises to evicted tenant.**

Since lease was not assignable, market value thereof could not have been within contemplation of parties at time of execution of contract; but lessor was charged with full knowledge of value of use of premises to tenant who was evicted.

9. **Landlord and tenant** ⟨key⟩180(4)—**Generally, where there does not appear to have been willful wrong or gross negligence, remuneration for eviction of tenant is restricted to immediate consequences of breach.**

General rule is, where there does not appear to have been a willful wrong or gross negligence, remuneration for eviction of tenant is restricted to immediate consequences of breach.

10. **Landlord and tenant** ⟨key⟩180(3)—**Where property has no rental value, evidence of actual value of its use to evicted tenant is permissible.**

Where property has no rental value, evidence of actual value of its use to tenant, who has been evicted, is permissible.

11. **Damages** ⟨key⟩40(2)—**In action for damages occasioned by breach of contract, probable profits to be earned under contract may be recovered.**

In action for damages occasioned by breach of contract, probable profits to be earned under contract may be recovered, where loss can be shown with reasonable certainty.

12. **Damages** ⟨key⟩6—**Rule that uncertain damages cannot be recovered embraces uncertainty as to whether gain would be derived from performance of contract, not as to its value.**

Rule that damages, which are uncertain or contingent, cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from performance of contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all.

13. **Landlord and tenant** ⟨key⟩180(4)—**Evicted tenant could recover any loss occasioned to its established business because of eviction when properly pleaded.**

Tenant, having established business on premises from which it was evicted, could recover any loss occasioned to its business, prop-

erly pleaded, as part of compensation to which it was entitled by landlord's breach of contract.

**14. Landlord and tenant ⟐180(4)—Evicted tenant could recover damages for expenses of moving its stock of merchandise as within contemplation of parties.**

Evicted tenant having established business on premises, having pleaded same properly as special damages, and trial court having found same to be correct, could recover damages for expenses incident to moving its stock of merchandise, as being within contemplation of parties to contract.

**15. Landlord and tenant ⟐180(4)—Tenant could recover only such damages for eviction as it could not have reasonably prevented.**

Evicted tenant was required to minimize its damages for breach of contract, and it could only recover such damages as it could not have reasonably prevented.

**16. Landlord and tenant ⟐180(4)—Evicted tenant was entitled to such "special damages" as were within contemplation of parties at time contract was signed.**

Tenant, evicted by holder of superior title after lien foreclosure, *held* entitled to such special damages occasioned as were within contemplation of parties at time of signing contract; term "special damages" including losses of profits in its established business, excess rentals paid by it above rentals named in contract of lease of premises from which it was evicted, and expenses of transferring its business to its new location, all of such items being within the contemplation of parties at time of signing of lease contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Damages.]

Hall, C. J., dissenting in part.

Appeal from District Court, Potter County; W. E. Gee, Judge.

Suit by the B. F. Avery & Sons Plow Company against J. W. Kennerly and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Cooper & Lumpkin, of Amarillo (C. F. Cornell, of Dallas, of counsel), for appellants.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

RANDOLPH, J. This suit was filed by appellee against appellants to recover damages for breach of a rental contract. A jury was waived and trial was had before the court. On hearing the case, the trial court rendered judgment in favor of appellee, and from such judgment appellant (defendant below) has appealed to this court.

Appellee entered into a contract in writing with appellants, a joint-stock association, whereby appellants leased to appellee certain premises in Amarillo for a period of three years from August 1, 1925, at a monthly rental of $200. At the time this lease was executed, the leased premises were under lien obligations, as shown by the findings of the court, of which appellee had notice. The lien was thereafter foreclosed by the holder, who then required and caused appellee to remove from such premises. On removing from the leased premises, appellee negotiated a lease for another building, for which it contracted to pay rent at the rate of $260 per month, to which it removed, and in which it has continued to carry on its usual and customary business.

The trial court found as a fact that the leased premises, on August 1, 1926 (the date of the eviction), had a market value of $350 a month for the unexpired term of the lease —that is, for the two-year period from July 31, 1926, to July 31, 1928—and that plaintiff expended the sum of $702.50 in removing its usual stock in trade from the leased premises to its new quarters; that the appellee did not have any right given it, under the lease contract, to assign, sublet, or sell its lease on the premises from which it was evicted. Upon these facts the trial court concluded, as a matter of law, that the appellee was entitled to recover the difference between the market value of the premises, $350 per month, and the contract price $200, for said two-year period, and the expense of the removal of its stock, and rendered judgment accordingly.

In considering this case on appeal, it has been suggested to the writer that neither the trial court nor this court have jurisdiction of the case, for the reason that the pleadings and proof fail to show a legal eviction of the plaintiff. We will therefore dispose of this question of jurisdiction before proceeding with the decision of the other questions which are presented by assignments of error.

[1] The question of the legality of the eviction pleaded is not raised by any of the assignments of error. On the contrary, plaintiff and defendants have each impliedly admitted the eviction. The rule is that, where suit is brought to foreclose a prior lien on land, which prior lien was in existence, and of which constructive notice was given by the record of such lien to the tenant who afterwards acquired the lease, and the tenant is not made a party to the foreclosure proceedings, such tenant is not bound by the decree rendered or by the subsequent proceedings in such suit. Lockhart v. Ward, 45 Tex. 227; Alford v. Carver, 31 Tex. Civ. App. 607, 72 S. W. 869. In the case of Bateman v. Brown, 297 S. W. 775, this court has held:

"This being an action to foreclose liens given upon the land prior to its lease, and the lessor and the tenant both having been made parties defendant, and the receiver having been appointed and having taken possession of the

property as of the date of the filing of the suit and the issuance of notice, there is presented a case of eviction of the tenant by paramount title, the effect of such eviction being to end the relation of landlord and tenant and terminate the lease."

And it then proceeds to state the reverse of the rule, as follows:

"If the Batemans had not been made parties defendant to this action, the lease would not have terminated by the foreclosure proceedings and decree."

[2] This holding being correct, and the tenant not being bound by the decree of foreclosure, and such decree, therefore, not in itself furnishing a method of terminating the lease, as against the tenant, was the tenant under any such compulsion, either constructive or actual, to surrender the premises to Davidson, who is the owner of the paramount title, before it could maintain its claim of damages for eviction?

It is true that, as to the tenant, the questions of paramount title and right to foreclose, as asserted by Davidson in his foreclosure suit, were not adjudicated. The tenant could, rather than surrender the possession on demand of Davidson, have redeemed the premises by paying off the indebtedness evidenced by the prior lien, or else have forced Davidson to sue him and suffer an actual eviction by ouster. Is he required to do either, in order to constitute his surrender an eviction? In other words, will the tenant, under the circumstances alleged in plaintiff's petition, be required to pay off the obligation which has become a paramount title as against his landlord, or be required to contest such paramount title in a suit which he has forced the owner thereof to bring against him, and thus require that he be judicially evicted before he can be said to have sustained damages by eviction? We think not.

In this case there is no question but that Davidson held a superior outstanding lien, of which plaintiff had constructive notice. In the case against the landlord, this lien had been merged into a judgment of foreclosure, process had been issued, the premises sold, and the lien thereupon had become the paramount title. There is nothing in the evidence to disclose that any other result would have obtained, if the tenant had compelled Davidson to file suit to oust it from possession of the premises. When Davidson demanded that the plaintiff yield the possession to him, such was the condition which confronted the plaintiff. We do not think that the plaintiff was required to go to the cost and expense of contesting in court a title which was admittedly paramount against its own right, as disclosed by the record, or that it was required of it to pay

300 S.W.—11

off and discharge the lien before it had the right to yield to Davidson's demand and to surrender the possession, but that the surrender thus forced on it was a constructive eviction. If, as appears from the pleadings and the evidence, Davidson was in the position of holding an incontestable lien and had reduced same to judgment against the landlord, and by mesne process he had become the holder and owner of the paramount title, and that the same result would undoubtedly have obtained in a like suit brought by Davidson against plaintiff, can it be claimed that the law would require the plaintiff to make such a losing contest and pay the costs thereof before surrendering the premises on Davidson's demand?

[3] The law does not require a useless thing to be done before affording relief. "To constitute an eviction, it is not necessary that there should be a manual or physical expulsion or exclusion from the demised premises or any part thereof." 36 C. J. 262.

[4] The general rule is that there can be no constructive eviction, unless the tenant abandons the premises on account of the acts or circumstances claimed to operate as an eviction. 36 C. J. 263. "It is not necessary that the tenant should be forcibly ejected or dispossessed of the demised premises by process of law, but he may peaceably yield possession to the person who has the superior title or who has been adjudged to be entitled to the possession, and treat himself as having been evicted. However, an eviction does not arise by a voluntary surrender of possession or a mere assertion of a superior title. The person to whom the tenant yields possession must have a good title and a present right of entry, and tenant must act in good faith and without fraud or collusion." 36 C. J. 272.

In the case of Basin Park Hotel Association v. Arkansas Co., 151 Ark. 322, 330, 236 S. W. 275–277, the Supreme Court of Arkansas says:

"It would have been a vain and useless thing, for the lessees to have waited for the process of the court to put them off the premises, when the mortgagee had a valid decree of foreclosure in which it was recited that the purchaser at the sale should take the premises free of the lease. It is true that the mortgagee had the option to continue the lease, and offered to allow the lessees to remain there a few days after the sale. The mortgagee, however, refused to allow the lessees to remain during the term of the lease, unless they waived their claim against the lessor for damages and paid it the rent. Under the decree, the mortgagee had the right to expel the lessees from the premises, and its action was equivalent to a threat to do so. The threat to turn out the tenant, unless he promised to pay the rent to the mortgagee and waive his claim for damages, amounted to a complete ouster or eviction. Smith v. Shepard, 15 Pick. (Mass.) 147, 25 Am. Dec. 432."

It is true that in the above case the tenant had been made a party to the foreclosure proceedings and all that was lacking to enforce the judgment was the issuance of process. But we can see no difference in principle between that case and the case at bar. In this case, Davidson had asserted his rights as against the landlord, reduced them to judgment, and became possessed of the paramount title. So far as the pleadings and evidence show, the appellee had no defense to, any action Davidson might have brought against it for the possession. Why, then, should it have been required to refuse Davidson's demand, and to continue in possession until ousted by legal process, in which it must have incurred the costs of court?

The threat to oust the tenant, made by the holder of the paramount title, unless the tenant entered into a new contract with him, has been held to be an actual and complete eviction. Smith v. Shepard, 15 Pick. (Mass.) 147, 25 Am. Dec. 432. We 'therefore hold that the petition states a legal cause of action in showing surrender . of its premises upon demand of the owner of the paramount title, under the conditions pleaded.

We will now consider the propositions and assignments, as presented on this appeal. The appellant's first and second propositions present the controlling questions in the case. They are as follows:

"(1) Where a lessee, holding under an unassignable lease, sues for the breach thereof by the lessor, the lessee's measure of damages is not the difference between the contract price and the market value of a lease on the leased premises, but the difference between the contract price and the value of the leased premises to the lessee.

"(2) The lessee, upon the breach of the lease contract by the lessor, is under the duty of mitigating its damages, and, where the lessee is shown to have done so, the lessor is entitled to the benefit thereof."

[5] Where a party has been damaged, compensation is the end of the law. It is also a rule that the party suffering the damage is required to take all reasonable precautions to minimize his damages. But the first question for our consideration, some damage being shown, is: What is the measure to be applied in ascertaining the amount of the recovery?

[6] The lease in controversy was not assignable; hence, as far as the appellee was concerned, it had not and could not have a market value, for appellee could not sell or assign the lease. The question of compensation, as applied to the damages suffered by appellee, cannot, therefore, be fixed by any measure of market value of the right by which appellee held the premises, but must be measured by the value of the use of the premises to the appellee.

[7] As an element of its damage, appellee was entitled to recover the rent expense of premises suitable to the transaction of its business and the expense of removing to the new location; but such expenses must be shown to have been reasonable and necessary. 17 C. J. p. 914, § 201. Upon its removal from the premises from which it had been evicted, appellee entered into a contract for the rental of another building, for which it agreed to pay $260 per month, $60 per month more than it had contracted to pay for the premises from which it had been evicted. As far as the trial court's findings show, it had suffered no other loss or damage, except in the expense of the removal to the new premises. It is true that the trial court found that the new premises "are not so safe nor so desirable for the purpose of plaintiff's business as the quarters which it had under lease from defendant"; but there is no finding of specific damage to entitle appellee to a recovery for that reason.

[8] The lease not being assignable by the appellee, the market value thereof could not have been within the contemplation of the parties at the time of the execution of the contract. But the lessor was charged with full knowledge of the value of . the use of the premises to appellee. In the case of Jonas v. Noel, 98 Tenn. 440, 39 S. W. 724, 36 L. R. A. 862, the Supreme Court of Tennessee holds that the measure of damages for breach of rental contract for business premises is the difference between the contract price and the value of the property in question, as between vendee and vendor; but, as to the measure of damages between lessee and lessor, that court quotes from Sedgwick on Damages, as follows:

"Wherever the measure of damages involves the question of value, however much the market may be resorted to, to determine what the value is, this resort is had, not as a conclusive test, but to aid in getting at that real value to which the plaintiff is entitled."

That court further says:

"But the purpose of the law is to give the party complaining as near complete compensation for the loss of his bargain as possible; that is, to place him in as good a position as he would have been in, if he had obtained what he had bargained for, so that, if the thing contracted for had been dealt in, in the market, a reference to the market price will ordinarily show what it will cost to indemnify the plaintiff against loss. * * * Mr. Sutherland, in his work on Damages (volume 2, § 864), says: 'The difference between the rent to be paid and the actual' value of the premises at the time' of the lessor's breach 'is the natural and approximate damage' sustained by the lessee, and 'this is ordinarily measured by the amount the lessee would be compelled to pay for other premises equally well adapted to his business.' * * * With regard to those subjects of contract which are freely dealt in, and which command ready buyers in the marts of trade, there

is. usually no harm done in referring to the market to fix the standard of value; but, even in such cases, this is not the final or 'conclusive test of value.' 1 Sedg. Damages, § 245. But, where the article or thing in question is so unusual in its character as that there is little or no demand for it, its value must be ascertained in some other way, and from such elements as are attainable. Id. § 495. In such cases it is evident that to refer to the market as the sole standard of value may work serious injury to the party complaining."

The contract of lease in question not being assignable, it appears to us that the same rule would apply as applies in other cases where there is no market, by reason of the "matters or things contracted for have not been bought or sold in the market, so as to have established a 'market value.' "

[9] The general rule is, where there does not appear to have been a willful wrong, or gross negligence, remuneration is restricted to the immediate consequences of the breach. De La Zerda v. Korn, 25 Tex. Supp. 188.

[10] Where property has no rental value, evidence of the actual value of its use to the lessee is permissible. Hipwell v. National Surety Co., 130 Iowa, 656, 105 N. W. 318. Where a regular and established business is injured, interrupted, or destroyed, the measure of damages is the diminution in value of the business resulting in the loss of profits, together with such reasonable expenses as were the natural result of the breach of the contract. 17 C. J. p. 914, § 200.

[11] In an action for damages occasioned by a breach of contract, the probable profits to be earned under the contract may be recovered. Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 754. Where the loss of profits can be shown with reasonable certainty, they are recoverable. Walter Box Co. v. Blackburn (Tex. Civ. App.) 157 S. W. 220.

[12] The rule that damages, which are uncertain or contingent, cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. Wakeman v. Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676.

[13] In this case it appears that the appellee had an established business, and had conducted it for at least a year in the premises from which it was evicted; hence it had a clear basis upon which to predicate its damages. If there was any loss occasioned to its business, as a part of the compensation to which it was entitled by appellant's breach of the contract, it was entitled to recover same when properly pleaded. Appellee's pleading is based solely upon the theory of its right to recover the difference between the contract price of the lease and the market value of the lease for the unexpired term.

[14] As to the recovery for the expenses incident to moving its stock of merchandise, the appellee having pleaded same properly as special damages, and the trial court having found same to be correct, it was entitled to recover such damages as being within the contemplation of the parties to the contract.

[15] It is clear that appellee was required to minimize its damages for the breach of the contract, and that it can only recover such damages which it could not have reasonably prevented. Lamar v. Hildreth (Tex. Civ. App.) 209 S. W. 167, 171; Jones v. George, 61 Tex. 345, 362, 48 Am. Rep. 280.

[16] We therefore hold that appellee was not entitled to recover the difference between the contract rent and the market value of the lease, but that the measure of damages appellee was entitled to have applied in the case at bar is such special damages as may have been occasioned it and which were within the contemplation of the parties at the time of the signing of the contract; that coming within the meaning of the term "special damages" are losses of profits in its established business, excess rentals paid by it above the rentals named in the contract of lease of the premises from which it was evicted, and expenses of transferring its business to its new location, all of such items being within the contemplation of the parties at the time of the signing of the lease contract.

For the errors indicated, the trial court's judgment is reversed and remanded for a new trial.

JACKSON, J. (concurring). The record in this case discloses that the court, among other things, finds, in substance, that a valid lease contract was made creating the relation of landlord and tenant between the appellants and appellee, at which time Alex Davidson held a valid lien against the leased premises, and of which the appellants knew.

Suit was instituted by Davidson on his lien, judgment against the appellants in this case was had in that suit, and order of sale was issued on said judgment, directing the sale of the property and that the purchaser be put in possession thereof, and, in obedience to the order of sale issued by the court on the judgment, the property was sold at public sale, and Alex Davidson became the purchaser and received a sheriff's deed thereto; that he refused to recognize the lease made to the appellee by appellants, and immediately demanded of appellee possession of the premises; that appellee yielded possession, upon the demand of Davidson, solely because it believed he had the paramount title to the property and was entitled to possession thereof. The appellee was in possession of the property at all times during the foreclosure proceedings and the sale thereunder, but was not a party to the suit.

Do these facts show such an eviction of appellee as authorized it to maintain a suit against the appellants for breach of the implied covenant in the lease contract for quiet enjoyment? Tiffany on Landlord and Tenant (volume 2, par. 186) says:

"An eviction under title paramount occurs when the tenant is deprived of possession by one having a right to such possession not derived from the tenant himself, which takes precedence of the rights of the tenant under the lease. * * * For instance, if the tenant under the lease is dispossessed by one claiming under a valid prior lease made by the same lessor, there is an eviction by title paramount, and there is likewise such an eviction if the tenant is dispossessed by one claiming under a mortgage or other lien created by the landlord before the making of the lease, as when it is by a mortgagee having the legal title, with a right of possession thereunder or by purchase at foreclosure sale.. * * * For the purpose of an eviction by title paramount, the tenant may be dispossessed under legal proceedings on the part of the holder of such title, or he may, it seems, be dispossessed by the latter by force exerted directly by himself or his servants without any judicial authority, as when the owner of the paramount title renders the premises untenable by removing part of a structure thereon. But it is not necessary that the tenant be dispossessed by legal proceedings, or by the exercise of force on the part of the holder of the superior title, it being sufficient that upon demand by the holder of the paramount title, the tenant yields possession to him."

Underhill on Landlord and Tenant (volume 2, par. 692) says:

"The tenant is not bound to continue in possession of the premises until the judgment in the action of eviction and an actual expulsion by legal process. He need not submit himself to the trouble, inconvenience, and expense of litigation, to defend his landlord's title, but he may quietly yield possession to him who has or claims he has title paramount to that of the landlord. * * * To constitute an eviction where it is based on a paramount title, there must be either an entry or an ouster of the tenant under or by virtue of the title, or, if he is convinced of the hopelessness of his condition, he must surrender possession and justify his action in doing so as against the landlord. When he learns that a judgment has been rendered in a court of law, he need not wait to be forcibly ousted, but may voluntarily acquiesce in the judgment and obey it."

In Andrews v. Richardson, 21 Tex. 287, in speaking of the rights of a purchaser under execution sale, this language is used:

"Until the sale was avoided at the instance of the defendants, the plaintiff, as the purchaser, was entitled to recover the possession. He might have brought his action against the tenant in possession, but it would seem the tenant was not obliged to defend against the title of the true owner, but might attorn to him."

See, also, Camley v. Stanfield, 10 Tex. 546, 60 Am. Dec. 219; Hartzog et al. v. Seeger Coal Co. (Tex. Civ. App.) 163 S. W. 1055.

In Texas Land Co. v. Turman, 53 Tex. 619, the court says:

"The practical effect, however, of Camley v. Stanfield, is to permit a tenant holding over to defend his possession by showing that subsequent to the lease he purchased his landlord's title under execution sale, and thus indirectly, in such case, to raise the question of title. 10 Tex. 546 [60 Am. Dec. 219]. Subsequent decisions of this court have recognized this doctrine, and it has further been held that the tenant in possession may lawfully attorn to a third party, who had purchased at execution sale the title of the landlord. Andrews v. Richardson, 21 Tex. 297; Gallagher v. Bennett, 38 Tex. 295."

The Supreme Court of the United States, in Merryman v. Bourne et al., 9 Wall. 592, 19 L. Ed. 683, says:

"If the tenant be evicted, he may take a new lease from the party evicting him. It has been held that, if threatened with suit upon a paramount title, the threat, under such circumstances, is equivalent to eviction. He may thereupon submit in good faith, and attorn to the party holding a valid title, to avoid litigation. In such case it is incumbent upon him, and those who have profited by his submission, to show the existence and superiority of the title in question [citing authorities]. * * * In the case under consideration, Woodworth had recovered upon the adverse title against a part of those in possession, and threatened suit against the others. They yielded, to avoid the inevitable adverse consequences of a contest. This they had a right to do."

Under these authorities, if a tenant should attorn to a party acquiring a title paramount to that of the landlord, at an execution sale, and the landlord should sue such tenant, for rent or for possession of the premises, the tenant would be charged with the burden of showing that the title to which he had attorned, and under which he held possession, was superior to the title of the landlord, and also that he acted in good faith. If he succeeded in establishing this, the landlord could not recover possession of the premises and evict the tenant, nor collect the rents, because the purchaser at a valid execution sale acquires the paramount title, and all of the possessory rights which follow a valid title. If the tenant is permitted to defend against the landlord's claim for possession or rent by urging the paramount title of a purchaser in execution sale against his landlord, without being evicted by force or by ejectment against him, in my opinion he is entitled to assert a cause of action against his landlord for a breach of the lease contract, based on an eviction by a paramount title acquired by purchaser at execution sale, though the tenant was not a party to such suit, and no action had been instituted against him to evict him.

In this case, the appellee pleaded that he

had been evicted by a paramount title to that held by his landlord, and the appellants answered by general denial. This presented to the court, for his determination, the issue as to whether Alex Davidson had acquired the paramount title, and this issue the court decided in favor of appellee. Neither the superiority of the title of Alex Davidson to appellee's landlord, nor the good faith of appellee in yielding possession to the paramount title, is questioned.

The appellee had the right to retain possession of the premises until ousted by suit against it for possession; but, under this record, the result of such suit is certain, and it is fair to conclude, as did the trial court, that it yielded "to avoid the inevitable adverse consequences of a contest." It had the right to pay off the lien held by Davidson, aggregating the sum of $109,757.34, and regain the entire property of the appellants, a part of which it was renting for $200 per month. However, it was not required, in my judgment, to exercise either of such rights before it could maintain a suit against the appellants for the breach of the lease contract, and the general demurrer urged to appellee's petition was correctly overruled.

Article 5237, R. C. S. 1925, prohibits a tenant from leasing, subletting, or assigning his lease without the written consent of his landlord. This would prohibit the tenant from selling his lease on the market without such written consent, and hence the lease could have no market value, for which reason the market value could not be the measure of appellee's damages.

"Market values are created and controlled by the condition of the market with reference to supply and demand. So market value is ordinarily arrived at by conclusions deduced from transactions in commodities or property of the same or like character. But such transactions must occur under ordinary and normal conditions in the market, generally in open market, on 'fair competition, for cash, or on such time and terms as would be equivalent to cash, unaffected by elements which enter into transactions made outside the usual course of business, irrespective of peculiar circumstances." 38 C. J. p. 1262, par. 18.

Inasmuch as the appellee could not sell his lease without the consent of his landlord, such a sale or transaction would not occur under ordinary normal conditions, in an open market, on fair competition, "unaffected by elements which enter into transactions made outside the usual course of business." Speaking of the sale of a lease under execution of certain premises on the market, the Supreme Court, in Moser et al. v. Tucker et al., 87 Tex. 94, 26 S. W. 1044, says:

"It would not bring a fair price, and competitive bidding would be practically cut off by consent of the landlord that some particular bidder might take and hold under assignment so made, while the same right was denied to all other persons who might desire to purchase."

In Steger et al. v. Barrett, 58 Tex. Civ. App. 331, 124 S. W. 174, in which a writ of error was denied, it is said:

"The lease contract in evidence expressly provided that the leasehold should not be assigned or sublet. As a matter of law, a leasehold cannot be sold without the consent of the landlord, and consequently has no market value."

"Appellant's measure of damages, if any, was not the expense of performing his contract, but the profits, if any, which he would have realized therefrom. Orange Hotel Co. v. Townsend, 62 Tex. Civ. App. 1, 130 S. W. 701; 8 R. C. L. 454, § 24. The measure of damages in case of a breach of a contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed.' 17 Corpus Juris, 847, § 168. But he is not entitled to recover more by reason of the breach than he would have made by a performance of the contract. Id." Minney v. Scharbauer (Tex. Civ. App.) 286 S. W. 557.

In the case at bar, the statute inhibited the sale of the leasehold estate of the appellee without the consent of the appellants, and hence it could have no such market value as would be the measure of appellee's damages, and hence I concur in the opinion of Associate Justice RANDOLPH.

HALL, C. J. (dissenting). I agree that the judgment in this case should be reversed, but I find myself unable to agree with the other members of the court in the principles of law declared by them. I think the trial court has applied the proper measure of damages, under the facts disclosed by the record. There is nothing in the case to take it out of the general rule which fixes the measure of damages as the difference between the actual rental or market value and the rent reserved in the lease, with such additional damages as accrued to appellee incident to the removal of its stock of goods.

Profits are ordinarily regarded as not recoverable in this state, in cases of this character, on account of the speculative and uncertain nature thereof. De La Zerda v. Korn, 25 Tex. Supp. 193; Loyd v. Capps (Tex. Civ. App.) 29 S. W. 505; Wilkinson v. Stanley (Tex. Civ. App.) 43 S. W. 606. The general rule adopted by the trial court seems to be universally recognized, and has been adopted by the courts of this state, both in leases of urban property as well as farms and pasture land:

"The value of the use and occupation or rent of the premises would undoubtedly be a proper subject of computation, and so would the injury to defendant's goods." De La Zerda v. Korn, supra.

In the Loyd v. Capps Case, supra, the court held that the measure of damages for eviction from a farm was "the difference between the agreed rent and the worth of the use of the land, where no special damages are

shown." It was also held in the Loyd v. Capps Case that such difference would constitute the value of the plaintiff's contract, and this holding was approved in Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 753, involving the breach of a farm lease. In Haker v. Boedeker, 1 White & W. Civ. Cas. Ct. App. § 1034, the court said that the measure of damages for 'breach of the lease was "the fair rental value of the premises, and no more." That was a farm lease, where no crops had been planted at the time of the breach.

In Murphy v. Service, 2 Willson Civ. Cas. Ct. App. § 748, involving the breach of a lease by the lessor of a business house, the court said the measure of damages was the difference between the agreed rent and the actual value of the premises, at the time of the breach, for the unexpired term. The case of Buck v. Morrow, 2 Tex. Civ. App. 361. 21 S. W. 398, involved the question of damages for the breach of a lease of a pasture. The court applied the same rule, but not allowing the plaintiff to recover additional special damages which accrued to him by reason of having to hold his cattle temporarily on other lands. To the same effect is the holding in Wilkinson v. Stanley, supra, and the rule seems to be considered as settled by the text-writers upon this subject. Taylor's Landlord and Tenant (9th Ed.) § 617; 36 C. J. p. 83, § 709; 2 Underhill on Landlord and Tenant, 1184, § 698; 3 Sedgwick on Damages, § 1022; 1 Tiffany on Landlord and Tenant, 538; 3 Sutherland on Damages (4th Ed.) 3186. The English rule is so stated in Lock v. Furze, 15 Eng. Rul. Cas. 739.

I cannot assent to the proposition so broadly stated by my Brethren that, because appellee Avery & Sons could not, under Revised Statutes, art. 5237, sublet or assign the lands and tenements, the lease had no market value. It is true that such is the rule declared in Steger v. Barrett, 58 Tex. Civ. App. 331, 124 S. W. 174, but I am not prepared to assent to such holding. That was a case where the plaintiff sued for damages for the negligent burning of a house and certain personal property owned by him, situated upon leased land. The court said:

"By the fourth assignment it is contended that the court erred in refusing the special charge instructing the jury that 'the measure of plaintiff's damage by loss of his improvements was the fair market value at the time they were burned, or, if they had no market value, then their fair value to him.' The court instructed the jury to ascertain and find from the evidence the 'fair actual value' on the day of the burning of the buildings. The improvements were located on leased premises, as it appears. The lease contract in evidence expressly provided that the leasehold should not be assigned or sublet. As a matter of law, a leasehold cannot be sold without the consent of the landlord, and consequently has no market value. Moser v. Tucker, 87 Tex. 94, 26 S. W. 1044. Such things are not usually sold on the market.

In the absence of proof to the contrary, as in this case, the court was authorized, as a matter of law, we think, to assume that such property has no market value; and, in confining the jury to 'fair actual value,' the charge was in accordance with the evidence, and there was no reversible error in refusing the special charge."

The Moser v. Tucker Case cited does not sustain the rule so broadly stated in the Steger Case. The only question decided in the Moser Case is that, under the statutory inhibition against the assignment of a lease, the lessee's interest cannot be sold under execution. In the Moser Case an insolvent debtor had assigned his lease to certain attorneys. His creditors attacked the assignment, insisting that they had a right to subject it to the payment of the insolvent's indebtedness to them, by a sale under execution. It is nowhere intimated in the Moser Case that the statutory inhibition rendered the leasehold interest valueless, and for this reason it does not, in my opinion, support the doctrine announced in the Steger Case.

"Actual value," "market value," "market price," "cash value," "salable value," all mean the same thing. Milwaukee Mechanics' Ins. Co. v. Frosch (Tex. Civ. App.) 130 S. W. 600; 1 C. J. 1186. "Rental value" and "value of the use" also mean the same thing. Jones on Landlord and Tenant, 401, § 369.

In determining the value of the leasehold, it has been declared that its worth is not the amount it would bring, if offered for sale in open market; but its actual value determines that question. In other words, it is the sum which one would be obliged to pay for a term of equal duration in premises equally desirable, for a business or for the use he intended to make of it. This is the holding in Jonas v. Noel, 98 Tenn. 440, 39 S. W. 724, 36 L. R. A. 862. It is clear, from the record before us, that the "market value" and the "actual value" of the lease in question are the same, call it what you will. This is a case where "nomenclature" is unimportant. The effect of the lease in this case was to give Avery & Sons right of possession and use of the premises for the term stipulated; but, because they could not sublet it or assign their lease, this fact, in my opinion, did not deprive the leasehold of what may be termed a "market value." The mortgagor of personal property in this state is prohibited, by the Penal Code, from selling or disposing of the property; but this does not preclude him from proving and recovering its market value from a third party, or even the mortgagee who illegally converts or destroys it.

An uncertain equitable interest in land cannot be sold under execution. Neither can property in custodia legis be sold by the custodian or under execution (Edwards v. Norton, 55 Tex. 405); but in such case I think it cannot be seriously contended that such property would not have a market value, or that

its market value could not be established by proof of the market value of other similar property so situated. If the property in question could have been leased, if vacant, for any sum, then I think such sum was its market value, or actual value. This value was proven by witnesses who knew what amount of rent other property of that kind was being leased for in Amarillo. This proof did show that the leasehold estate had a market value which the court found to be $350 per month. Since the court found that it had a market value, and this finding is supported by both pleadings and evidence, judgment was properly predicated thereon; whether, under the statute, this particular leasehold could have been then sold or not. Wilson v. Hagins (Tex. Sup.) 295 S. W. 922.

I respectfully dissent from the holding of my associates with reference to the rules which should govern the recovery of damages in this case, upon another trial. Aside from this issue, however, I am of the opinion that the general demurrer should have been sustained to the plaintiff's petition. I do not think plaintiff was entitled to recover according to its allegations. It is alleged that Alex Davidson had a mortgage upon the property prior to the time of the execution of the lease; that, upon default on the part of appellants in certain payments due under the mortgage, Davidson filed suit against appellants and foreclosed his mortgage lien; that an order of sale was issued, the property duly sold thereunder on the 6th day of July, 1926, by the sheriff of Potter county, at which sale Davidson, the mortgagee, became the purchaser of the lands and tenements described in the lease. The plaintiff then alleges:

"Thereupon the said Alex Davidson, the purchaser at said sale, his agent and assigns, did assert the paramount title to said premises, and did demand possession thereof from your plaintiff, who, in deference to said paramount title so acquired by said Alex Davidson, on or about the 1st day of August, 1926, was compelled to deliver possession unto him of the said premises."

It is my opinion that this allegation shows a voluntary abandonment of the premises upon the request of Davidson, "in deference" to his assertion of a paramount title. Davidson was only a mortgagee out of possession, and did not have the paramount title until July 6, 1926, when he purchased under his foreclosure sale. Eviction, in a case of this character, by the great weight of authority, never means a voluntary surrendering of possession in deference to a paramount title; but there must be actual dispossession by force or process. The fact that appellee was not made a party to the foreclosure proceeding against Kennerly et al. did not entitle Davidson to a writ of possession against it. In the early case of Lockhart v. Ward, 45 Tex. 227, it is held that a tenant for a term of years has a right to redeem, and is a necessary party to a suit to foreclose a mortgage upon the land, executed by his landlord; that a judgment of foreclosure, in which the tenant for years is not made a party, is not conclusive against him, and does not cut off his equity of redemption. If Avery & Sons had been made parties to that action, then, according to the well-established rule, its equity of redemption would have been concluded by the judgment and sale, and the lease would have been terminated. Having failed to make it a party, its lease and right of possession thereunder was in no way canceled or affected by the decree. Wootton v. Bishop (Tex. Civ. App.) 257 S. W. 930 (writ of error refused); Bateman v. Brown (Tex. Civ. App.) 297 S. W. 773.

Since no writ of possession could be issued against Avery & Sons, based upon a judgment to which it was not a party, it could not have been lawfully dispossessed until its lease had been duly canceled, or its equity of redemption determined by a decree of a court of proper jurisdiction entered against it. Its right to occupy the premises could not have been challenged and the sale of the fee in no way affected its leasehold estate. Brush v. Fowler, 36 Ill. 53, 85 Am. Dec. 382; Wheat v. Brown, 3 Kan. App. 431, 43 P. 807; 1 Underhill on Landlord and Tenant, 33, § 31; 1 Tiffany on L. & T. 419, § 73.

It is said in 1 Wiltsie on Mortgage Foreclosure (4th Ed.) 505, § 371:

"Every tenant who takes a lease from the owner of the equity of redemption in mortgaged premises, subsequent to the execution and delivery of the mortgage, is a necessary defendant to a foreclosure, in order that title may be conveyed free from any claim or lease on his part. Any occupant or person in possession of the premises at the time of the commencement of the foreclosure is also indispensable, no matter how or under what circumstances he came into possession. A tenant or occupant not made a party is not bound by the decree and if omitted, he cannot be ejected till the expiration of his tenancy. Though his rights are expressly made subject to the mortgage, the rights of the tenant are not cut off unless he is made a party."

That part of the text where the author says the tenant "cannot be ejected till the expiration of his tenancy" is not supported by the cases he cites, but, with this exception, the excerpt is fully in accord with all the decisions I have read. It is held in Alford v. Carver, 31 Tex. Civ. App. 607, 72 S. W. 869, that, where a lessor mortgagor has not been made a party to a foreclosure by the mortgagee, although the lien has been foreclosed as to the lessee, such judgment does not cancel the lease, and the mortgagor lessor may still collect the rental from the lessee. In a note to Metropolitan Life Ins. Co. v. Childs Co., 14 A. L. R. 664, citing numerous authorities, it is said:

"Whether a lease of real estate previously mortgaged is terminated by a foreclosure action and sale is held by the majority of the decisions to depend on the joinder of the lessee as a party to the foreclosure action. Though there are some conflicting decisions, such a lease, by the weight of authority, is thus terminated in case, and only in case, the lessee is made a party to the foreclosure suit."

Under these well-established rules, I am unable to agree that Avery & Sons, who are still in possession· under a valid lease, which has not been canceled, and against whom no writ of possession could issue, and who had the right to redeem, can maintain an action for damages after having voluntarily surrendered the premises in deference to a paramount title asserted by one who had purchased under a foreclosure sale made *after the lease had been executed*. The covenant for quiet enjoyment had not been breached. The long-established rule of the common law is that a covenant for quiet enjoyment in no way relates to the title, but guarantees possession only. At the time of the sale under execution, Avery & Sons had this possession, and the rule is well established that a mere demand for possession by one claiming paramount title, which has been matured *after the lease*, is not eviction, nor tantamount to eviction. This rule is clearly announced by the Supreme Court of North Carolina, in Cowan v. Silliman, 15 N. C. 46. There, there was a demand for the possession of a slave. Ruffin, Chief Justice, said:

"If the covenant be for quiet possession, I think it has not been broken. In the superior court it was held that the demand of the owner was a breach, because it rendered the present plaintiff chargeable in an action for the value. That cannot govern the case, because he was so chargeable without demand upon his purchase, possession, and claim of property, or, at all events, would have been, by a sale, which would have been of itself a conversion. This would be to sink the distinction between a covenant for title and that for quiet enjoyment. That a warranty of chattels, constituted in this deed by the words 'warrant and defend,' is a covenant for quiet enjoyment, is a settled rule in this state. It has been understood by the profession too long to admit now of a question. Hence upon eviction the value at that time is the measure of damages. It is familiar doctrine, in reference to land, that suit and even recovery is no breach, unless the loss or disturbance of possession follows. I had thought it equally so in relation to chattels. The reason is the same. The covenants respect the possession. The opinion of the court is that in holding a demand by the owner of the slave to be a breach of the covenant for quiet possession, the superior court erred."

This rule has been recognized and enforced in this state. In Atler v. Erskine, 50 Tex. Civ. App. 576, 111 S. W. 186, which was a suit for the rescission of a contract of sale, or, in the alternative, to recover on an alleged breach of warranty of certain lands, Judge Neill said:

"Therefore the question to be determined may be stated thus: Did defendant's refusal to deliver possession upon the demand of plaintiff constitute a breach of his warranty, such as to authorize plaintiff to recover from him the value of the consideration paid, with interest from the date of the demand? * * * Ordinarily such a covenant is only broken by an eviction, or something equivalent thereto. There is a breach whenever there is an *involuntary loss of possession* by reason of the hostile assertion of an irresistible title. The eviction may be constructive, as when the purchaser is unable to obtain possession by reason of the paramount title being in a third person. Flanagan v. Ward, 12 Tex. 209; Peck v. Hensley, 20 Tex. 674. The eviction must be alleged and shown to be *by a paramount title existing before or at the time the defendant made his covenant*, for the covenant of warranty relates solely to the title as it was at the time the conveyance was made, and only binds the grantor to protect the grantee and his assigns against a better title existing *before* or *at the date of the grant*." 

In the instant case there is no allegation of an involuntary loss of possession by reason of the hostile assertion of an irresistible title. The allegation is a voluntary abandonment of possession in deference to the title. Moreover, the appellee's petition shows that the paramount title in Davidson was not acquired until after appellee had leased the land. Under the rule in Texas, Davidson, as a mortgagee, had no title whatever. He simply had a lien to secure his debt. In discussing this question, it was said in Jones' Heirs v. Paul's Heirs, 59 Tex. 41, 45:

"The possession of the vendee under the title which he acquired with the warranty is not disturbed by the mere existence of the superior title, and he has no right to presume that it will be disturbed until he actually feels its pressure upon him. * * * This rule presupposes that the vendee has taken possession of the land and has suffered an eviction, either actual or constructive. When, however, the vendee has not taken possession, the same author lays down the following rule as best supported by reason and authority: 'When, at the time of the conveyance, the grantee finds the premises in possession of one claiming under a paramount title, the covenant for quiet· enjoyment or of warranty will be held to be broken without any other act on the part of either the grantee or the claimant.' This rule is put upon the ground that the possession of the holder of the superior title is an assertion of that title, and the law will not compel the grantee to commit a trespass upon the land in order to enable him to bring an action upon the warranty. Rawle, p. 154. The possession here spoken of is an actual possession. Moore v. Vail, 17 Ill. 190.

"It is true that in this country the real owner of land is said to be seized of the land, and constructively in possession, so that he may treat an unauthorized entry by another person as a trespass. Whitehead v. Foley, 28 Tex. 268. But inasmuch as the mere existence of a

superior title in the real owner does not work an eviction of a covenantee, who has entered upon the land, we hardly see how it can evict one who has received a conveyance with warranty, but has made no actual entry. Our opinion, therefore, is that the statute of limitations did not commence to run against the plaintiffs until there was actual possession 'of the land under the superior title, and we think it would be so, notwithstanding the fact that the deed from Paul to Jones contained a covenant of seizin, as well as of warranty, and that the former covenant was broken as soon as made. * * * There was a special demurrer to this amendment, because it did not show when the adverse possession commenced. This demurrer should have been sustained."

See, also, Eustis v. Cowherd Bros., 4 Tex. Civ. App. 343, 23 S. W. 737.

I think these cases announce the rule and sustain the proposition that a mere demand for possession by Davidson does not constitute an eviction, where Davidson acquired the paramount title after the appellee's lease was executed, and that appellee was not justified in abandoning the premises upon such assertion of paramount title, and that no suit for damages for eviction could be maintained until it was shown that they had been actually dispossessed, either forcibly or under a judgment which canceled their lease and gave Davidson the right of possession.

In support of the contrary rule, the majority cite 2 Underhill on Landlord and Tenant, par. 692, 2 Tiffany on Landlord and Tenant, par. 186, and several sections of Corpus Juris. It must be conceded that in some jurisdictions the tenant may not necessarily remain upon the premises upon which a prior lien has been foreclosed, and require actual and virtual ouster before he would be entitled to maintain an action for damages; but I find these cases to be an exception to the general rule. I have read nearly all of the cases cited in support of the text quoted in the majority's opinions, and I find that they are cases, with few exceptions, where eviction by paramount title was pleaded as a defense by tenants in an action by their landlords to recover rents.

In such cases the general rule is that the tenant may abandon the premises upon assertion of paramount title, or attorn to the holder of the paramount title, and successfully defend an action brought by his landlord for the rents. The reason of that rule is that it would be inequitable to require the tenant to pay rent to one whose lease had been breached through his own neglect and failure to protect his own title to the premises. Reference to some of the cases shows that the rule insisted upon by the majority is inapplicable to the instant case, where the tenant seeks to recover damages for breach of the covenant.

Moffat v. Strong, 22 N. Y. Super. Ct. 57, is a case where a tenant was sued for rent by the landlord, and "yielded under the pressure of danger that the building would be thrown down" by his landlord.

Camp v. Scott, 47 Conn. 366, is a suit by the landlord against the tenant for rent, in which the tenant defended only upon the ground that the paramount title was in another.

Marsh v. Butterworth, 4 Mich. 575, is a suit for rent by a landlord who never had any title to the premises, and it was shown that he had no authority to collect rents.

Home Life Insurance Co. v. Sherman, 46 N. Y. 370, is a case where there was an actual eviction by judgment in favor of the holders of the paramount title, after which the landlord sued for rent.

Hyman v. Boston Chair Mfg. Co. (Super. Ct.) 11 N. Y. S. 52, shows that judgment in summary proceedings had been rendered against the tenant and his immediate landlord, awarding possession to the superior landlord, and the tenant was allowed to defend upon the issue of paramount title.

Simers v. Saltus, 3 Denio (N. Y.) 214, was a suit by the landlord for rent, after a foreclosure of a mortgage against both the landlord and tenant, and an attornment by the tenant to the purchaser under the foreclosure sale.

In cases like the one under consideration, the rule established by the weight of authority is illustrated by the case of Mason v. Lenderoth, 88 App. Div. 38, 84 N. Y. S. 740. I quote from the opinion as follows:

"During the month of September, and until the 20th or 25th day of October, 1901, the defendant was occupying the plaintiff's premises as tenant under a written lease, by the terms of which he agreed to pay the plaintiff the monthly rental of $25 from May 1, 1901, to May 1, 1902. No rent was paid under the lease for the said months of September and October, and this action was brought to recover the amount alleged to be due for those months. At the time the lease was executed and delivered there was a mortgage on the demised premises, and in June, 1901, an action was begun to foreclose this mortgage. The defendant, as lessee in possession of the mortgage premises, was made a party defendant, and duly served with the summons and notice of the object of the action. Judgment of foreclosure and sale was entered on October 7, 1901. On November 1, 1901, the property was sold pursuant to such judgment, and at some time thereafter the referee's deed was delivered to the purchaser. Meanwhile, and between October 20 and 25, 1901, the defendant voluntarily gave up possession and occupancy of the premises.

"Upon this state of facts the defendant was awarded judgment against the plaintiff in this action for $100 damages and costs upon his counterclaim for damages alleged to have been sustained by reason, as is alleged, of the termination of the lease by the said judgment of foreclosure and sale. There was no attempt to show actual eviction, and there could have been no constructive eviction in any event, before the foreclosure sale and the delivery of

the referee's deed to the purchaser; until that time, at the earliest, the rights of the parties as landlord and tenant were not affected by the foreclosure action. Whalin v. White, 25 N. Y. 462; Mitchell v. Bartlett, 51 N. Y. 447; Peck v. Knickerbocker Ice Co., 18 Hun, 183; Cummings v. Rosenberg, 6 Misc. Rep. 538, 27 N. Y. S. 134; O'Neill v. Morris, 28 Misc. Rep. 613, 59 N. Y. S. 1075.

"The defendant, however, insists that he was compelled to, and did, vacate the premises by reason of the foreclosure action; that he was thereby disturbed in the beneficial enjoyment of the premises and there was consequently a breach by the plaintiff of the covenant for quiet enjoyment contained in the lease. * * * The alleged breach of the covenant was perhaps a proper subject of counterclaim in this action. Mayor v. Mabie, 13 N. Y. 151, 64 Am. Dec. 538. But the fact of eviction was not established, within the requirements of the adjudicated cases. The defendant was bound to show an eviction or an actual ouster by a paramount lawful title. Parkinson v. Sherman, 74 [75] N. Y. 88, 93, 30 Am. Rep. 268, and cases cited.

"While an eviction may undoubtedly be worked without resort to physical force or legal process (Home Life Ins. Co. v. Sherman, 46 N. Y. 370), an examination of the record fails to show that the defendant yielded possession of the premises under any of the circumstances which the courts have held sufficient disturbance of quiet enjoyment to constitute eviction. The covenant for quiet enjoyment goes only to the possession, not to the title. St. John v. Palmer, 5 Hill, 599; Fowler v. Poling, 6 Barb. 165.

"Mere apprehension of eviction created in a tenant's mind by a judgment of foreclosure under a mortgage prior to his lease is not legally sufficient to warrant him in fleeing from the demised premises and in claiming damages as in case of actual ouster. Change of title to the leased premises is not of itself necessarily inconsistent with a tenant's peaceable possession. No more than a bare transfer of title was shown at the trial of this action. It does not appear but the defendant might have retained his possession unmolested until the expiration of his term. In a new action brought by the defendant against the plaintiff for breach of his covenant, it might, perhaps, be established that there was an actual eviction or ouster of possession; but the record, which is the sole guide for this court, does not disclose the fact. Even if it be assumed that the title and right to possession were asserted against the defendant at the time the referee's deed was delivered to the purchaser, it is impossible to determine the amount of the defendant's damage, on the theory that the measure of damages is the value of the unexpired term, less the rent reserved in the lease (Mack v. Patchin, 42 N. Y. 167, 1 Am. Rep. 506), for the reason that it nowhere appears when the deed was delivered, and therefore the length of the unexpired term cannot be ascertained. Until the deed was delivered, the title did not pass out of the defendant's lessor (Mitchell v. Bartlett, supra), and no paramount title could have been asserted against the defendant or recognized by him."

To hold that a tenant may voluntarily abandon the premises without actual ouster, and maintain an action for damages for breach of the covenant, in this state, would conflict with the settled rules above shown, to the effect that a foreclosure of a mortgage lien, without making a tenant in possession a party, does not terminate the lease nor cut off the tenant's equity of redemption, and the further rule, stated in the Atler-Erskine, Jones-Paul, and Eustis-Cowherd Cases, to the effect that a mere demand for possession by the holder of the paramount title, acquired after the lease, is not eviction entitling the tenant to sue for damages.

I think the Texas rule is just, and is sustained by reason. At the time Davidson filed his suit to foreclose, Avery's possession of the premises gave him notice of the right under which the tenant held. The landlord had the right to presume, from Davidson's failure to make Avery a party defendant, that he would be satisfied to accept Avery as a tenant. In any event, no duty rested upon the landlord to interplead his tenant for Davidson's benefit, if, indeed, it had the right to do so. Having failed to exercise his right to make the Avery Company a party, and evict it by legal process, and by judgment terminate the lease, Davidson should not be permitted to repossess the premises under an agreement with the tenant only, to the injury of the landlord.

It must be further admitted that Davidson, by a suit, could have eventually evicted Avery & Sons; but it is not alleged that such suit had been filed, or that Davidson even threatened to sue. It may be inferred, from the fact of Davidson's failure to make Avery & Sons a party to the foreclosure proceedings that he never really intended to oust appellee, and that his demand for possession was for the purpose of laying a predicate to raise the rent. Moreover, if he had sued, the Avery Company could have interpleaded the appellant, the landlord, and it is a matter of common knowledge that many moons might have waxed and waned ere there would have been an eviction by legal process. By refusing to voluntarily abandon the premises, Avery & Sons could have cast the burden, expense, and hazard of defending the suit upon its landlord. As long as Avery & Sons had possession, it was not damaged. "Damages must be certain as to their existence." 17 C. J. 754, §§ 87, 88.

By voluntarily surrendering possession an unascertained and indefinite time before it could have been forced to vacate, Avery & Sons has invited, accelerated, and enhanced its damages, which precludes recovery. In any event, eviction by legal process or force was the only way in which the appellee could have ascertained the amount of its damages, or the date from which they must be computed. Appellee should not be permitted to manufacture a cause of action and increase the amount of his damages against the appel-

lant by an agreement with Davidson. I think the damages are too uncertain. 1 Sutherland on Damages (4th Ed.) § 53, says:

"Damages must be certain, both in their nature and in respect to the cause from which they proceed."

And in the note to this text it is said:

"To entitle plaintiff to recover present damages for apprehended future consequences, there must be such a degree of probability of their accruing as amounts to a certainty."

This the petition fails to allege, and, before the court could properly overrule the demurrer to it, he must presume that Davidson would not have accepted Avery as a tenant, would not consent to make a new lease, and would sue and succeed in ousting Avery at once. The court could not reasonably so presume, from the facts alleged.

For the reasons stated, I think the judgment should be reversed, with instructions to the trial court to sustain the general demurrer to the petition.